ALLIBONE, Treasurer, v. AMES *et al.*

1. A general deposit by a county treasurer, of county funds, subject to check is not a "loan" within the statutory or constitutional inhibition against the loaning of county funds, with or without interest.

2. On a bond conditioned on the repayment by a bank of county funds deposited by the county treasurer, the obligors are liable for the repayment of the amount of a certificate of deposit given the obligee for money deposited with the bank before the execution of the bond, and subsequently redelivered to the bank, and the amount of the certificate credited to the obligee.

(Opinion filed July 15, 1896.)

Appeal from circuit court, Lincoln county. Hon. JOSEPH W. JONES, Judge.

Action upon a bond given by a bank to secure the safe-keeping of public moneys. There was a judgment for plaintiff, and defendants appeal. Affirmed.

The facts are stated in the opinion.

*O. S. Gifford* and *C. B. Kennedy,* for appellants.

The general deposit of the public funds in defendant bank was a loan of the money deposited to the bank. §§ 1665 and 3697, Comp. Laws; McLaughlin v. Bank, 43 N. W. 715; Bank v. Bank, 2 Wall. 254; Thompson v. Riggs, 5 Wall. 680; Bank v. Millard, 10 Wall. 155; State v. Keim, 8 Neb. 67; Bank v. Goudy, 9 N. W. 566; State v. Bartley, 50 N. W. 176. Plaintiff's act of depositing money in defendant bank being unlawful, his right of action is defeated. §§ 3526, 3528, 3532 and 3577, Comp. Laws. See, also, Melchoir v. McCarty, 31 Wis. 254; Griffith v. Dresschler, 4 Minn. 278.

*Aikens & Brown,* for respondent.

Before the offense of embezzlment can be made out, it must distinctly appear that respondent has acted with felonious intent, and made an intentional wrong disposal, indicating a design to cheat and deceive the owner. People v. Treadwell, 69 Cal. 226; People v. Gray, 66 Id. 271; Beatty v. State, 82 Ind. 228; People v. Ealland, 55 Mich. 628; People v. Hurst, 41 Id. 328; People v. Wadsworth (Mich.), 6 West. Rep. 180. Even if plaintiff had made the deposits himself and in his own name individually, or expressly so directed, this in the absence of a proper allegation, sustained by proof of an evil intent, could not avail appellants. State v. McFetridge (Wis.), 54 N. W. 1.

HANEY, J. This action is founded upon a bond of undertaking containing the following conditions: "That whereas, the said Bank of Beresford has been designated by the said John Allibone, treasurer of the said Lincoln county, S. D., as one of the depositories for the public funds coming into his hands as such treasurer: Now, therefore, if the said Bank of Beresford shall safely keep all the funds deposited therein by said treasurer, and shall promptly honor and pay all checks drawn against such funds by said treasurer, and shall promptly pay over any or all of such funds so on deposit to said treasurer, or such person as may be designated by law to receive the same, upon proper vouchers, then and in that case this bond shall be null and void; otherwise to remain in full force and effect." It bears date February 6, 1893, and is signed by the Bank of Beresford as principal, and certain of the defendants as sureties. The sureties, answering, admit its execution, but deny any knowledge, or information sufficient to form a belief, concerning its alleged breach. There was a trial, wherein the court directed a verdict for the plaintiff. Judgment was rendered accordingly, a new trial was denied, and defendants appealed.

Defendants contend the complaint does not state a cause of action, and, upon the evidence, plaintiff cannot recover, because the contract between plaintiff and the bank is unlawful. They say the money deposited was, in effect, loaned to the bank; it was a crime for the treasurer to loan public money; therefore defendants are not liable. We think the evidence clearly establishes the fact that the deposits were made by plaintiff in his official capacity, and that they consisted exclusively of public money. Hence the important question arises, whether plaintiff violated the law by depositing such money with the bank for safe keeping, subject to checks drawn against the same. For the purposes of this case only, it will be assumed that, if such deposits were in violation of law, plaintiff cannot recover in this action. Counsel for appellants contend that the

loaning of public money by a county treasurer constitutes a crime, under Comp. Laws, Sec. 1665; that there is no distinction between a general deposit and a loan—and, in support of this position, cite State v. Keim, 8 Neb. 63, and other early decisions by that court; claiming that our statute was taken from Nebraska, and should receive the construction given it by the court of last resort therein. This argument is vulnerable in more than one respect: First. It is doubtful whether the section was taken from Nebraska, and, if it was, it is evident that an essential portion of it was inadvertently omitted, leaving it ineffectual for any purpose. State v. Taylor (S. D.), 64 N. W. 548. Second. If taken from Nebraska, the section was enacted in the territory prior to the decision in State v. Keim, and the legislature cannot be presumed to have considered a construction which had not been given it. Third. State v. Keim, and the decisions based thereon in Nebraska, have been in effect, overruled in a recent decision by the supreme court of that state, published since the case at bar was argued. State v. Hill (Neb.), 66 N. W. 541. And it may be added that while the doctrine of these earlier Nebraska cases has not, so far as we can discern, been followed elsewhere, it has frequently received adverse criticism—none more severe, perhaps, than in the recent case of State v. Hill, *supra.* So far as it rests on Sec. 1665 and the adjudications in Nebraska, defendant's contention must fall, but there is another view of the matter which demands attention. Sec. 11, Art, 11, of the state constitution, is as follows: "The making of profit, directly or indirectly, out of state, county, city, town or school district money, or using the same for any purpose not authorized by law, shall be deemed a felony, and shall be punished as provided by law." and Comp. Laws, Sec. 1662, formerly Sec. 101, Chap. 28, Pol. Code, which seems to be still in force, reads thus: "If any county treasurer shall loan any money belonging to his county, with or without interest, or shall use the same for his own individual purpose, he shall forfeit and pay for every such of-

fense a sum not exceeding five hundred dollars, nor less than one hundred dollars, to be recovered in an action at law at the suit of the state, for the use of the county." It is therefore certainly unlawful for a county treasurer to loan any money belonging to his county either with or without interest. Assuming, that, if the contract between plaintiff and the bank is unlawful, its sureties are not liable, we proceed to consider whether the transaction was, in fact or effect, a loan, within the true intent and meaning of any constitutional or statutory inhibition. Plaintiff acted within the terms of the undertaking. He did precisely what was contemplated by the contract and all concerned. He did only what state, county, city, town and school treasurers are doing every day, and have done since banks began to exist in the territory. The transaction was one peculiar to banking business—a general deposit, in which the return of the identical coin or currency was not intended. For some purposes such deposits are spoken of as equivalent to loans, because, like loans, they create the relation of debtor and creditor. Marine Bank v. Fulton Bank, 2 Wall. 252; McLaughlin v. Bank, 6 Dak. 406, 43 N. W. 715; Comp. Laws, 3662, 3697. But it does not follow that every general deposit is a loan, or that this transaction was unlawful. A voluntary deposit for exchange is made by one giving to another, with his consent, the possession of personal property to keep for the benefit of the former, or of a third party—the depositary being only bound to return a thing corresponding in kind to that which is deposited—and creates between the depositor and depositary the relation of debtor and creditor. Comp. Laws, §§ 3658, 3662, 3697. A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed. Comp. Laws, 3715. It, of course, creates the relation of debtor and creditor. When the personal property involved is money, it may be difficult, under some circumstances, to determine whether the transaction should be called

a deposit or a loan; but the two are not the same, and are never so regarded by any one in business, or the ordinary affairs of life. Certainly the thousands who daily deliver money to banks for safe keeping, and return in corresponding currency, do not regard the transaction as a loan, nor do they so speak of it. A careful examination of the definitions given in the Civil Code will show the distinction between these terms. A deposit is for the benefit of the depositor; a loan, for the benefit of the borrower. It is true, a deposit may also benefit the depositary, but such is not the primary object of the transaction. When the deposit is made for a fixed period, during which the depositor has no right to demand a return of the money, the transaction may be regarded as in all substantial respects a loan, but herein lies an essential distinction between a loan and a general deposit. In the former the person receiving the money agrees to return it at a future time, in the latter, at any time it is demanded. If it is agreed that the money shall remain for a fixed period, there is a loan, and not a deposit. This distinction is clearly stated by the supreme court of Pennsylvania in a case wherein, as in the one at bar, it was contended that a certain transaction should be regarded as a loan, and consequently unlawful. The court says: "A deposit is where a sum of money is left with a banker for safe keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum. It may or may not bear interest, according to the agreement. Whilst the relation between the depositor and his banker is that of debtor and creditor, the transaction cannot, in any proper sense, be regarded as a loan, unless the money is left, not for safe keeping, but for a fixed period, at interest, in which case the transaction assumes all the characteristics of a loan." Law's Estate, 144 Pa. St. 599, 22 Atl. 831. To the same effect, in principle, are the recent cases of State v. McFetridge, 84 Wis. 473, 54 N. W. 1, 998, and State v. Hill, *supra.*

We think the transaction between plaintiff and the bank, as expressed in the undertaking sued upon, and as it in fact ex-

isted, was not unlawful. The supposed consequences of deciding this question for or against defendants' contention have been urged with earnestness and eloquence by counsel for the respective parties. In this, as in other cases, the court has considered the probable results of its conclusions only for the purpose of aiding it in ascertaining, if possible, the legislative will, and in giving to its enactments, and the language of the constitution, such construction as the lawmakers of the territory and state intended. We believe the law of this state did not prohibit what was done by plaintiff, and so decide. That is all we do decide. The liability of the treasurer to his county for the loss of funds while on deposit is not involved, nor is it intended that any doubt concerning such liability shall be inferred from any language contained herein. Whether custodians of public funds should be prohibited from making deposits in banks, under any and all circumstances, is a question of public policy, for the legislature, not the courts, to determine. As shown by the briefs before us, very convincing arguments may be made for and against the proposition.

Defendants' only evidence was given by A. J. Ames. It was, on motion of plaintiff, all stricken from the record. Much of it tended to corroborate plaintiff's evidence, and we have discovered no reason why it was all excluded. However, defendants were not injured. Had it remained, the result would have been the same. It would have been the duty of the court to direct a verdict for plaintiff.

It is alleged in the complaint that between February 6, and May, 13, 1893, deposits were made, to the amount of $2,150.09, no part of which has been paid to plaintiff or any one entitled to receive the same. As shown by the evidence, there was a balance in the bank, belonging to plaintiff, when the undertaking was executed, of $3,174.61; subsequent deposits amounted to $1,248.52; and on April 6, 1893, plaintiff was paid $4,423.33, the balance then due him, by the delivery of a certificate of deposit, and his account was closed with the bank,

Subsequently this certificate of deposit was deposited with the bank and when it failed, on May 27, 1893, the balance due plaintiff was $2,150.09 for which amount, with interest, he recovered judgment. It is contended that under the allegations of the complaint, and upon the facts proven, plaintiff cannot recover of the sureties for any deposits made prior to the execution of the undertaking, that more money was paid out than was received after that date, and that no deposits were lost for which the sureties are liable. This position cannot be sustained. On April 6th, when the certificate of deposit was delivered to plaintiff, and accepted by him, it had all the characteristics of money. Its return to the bank must be regarded as a deposit of that amount of currency. It was—the parties so treating it—precisely the same as if the treasurer had received the coin and again deposited it. To say that if a person deposits a draft or certificate of deposit with a bank, and receives credit for the amount of it, he does not make a deposit of that amount, is simply absurd, in view of the modern methods of transacting business. "The term 'money' is used to designate the whole volume of the medium of exchange recognized by the custom of merchants and the laws of the country." Taylor v. Robinson, 34 Fed. 676; State v. McFetridge and State v. Hill, *supra.* The universal use of such means of exchange was contemplated by the parties to the undertaking in this case. Over $4,000 were deposited within the period alleged in the complaint, and the amount of plaintiff's judgment is clearly within the issues and the evidence.

The length of this opinion precludes an extended discussion of numerous rulings in relation to the introduction and rejection of evidence. Each of these has received careful consideration. Finding no reversible error, the judgment of the circuit court is affirmed