JONES, et al, Respondents, v. O'BRIEN, et al, Appellants.

(235 N. W. 654.)

(File No. 6111. Opinion filed March 17, 1931.)

214

*Bailey & Voorhees* and *Ray F. Bruce,* all of Sioux Falls, for Appellant.

*Bogue & Bogue,* of Parker, and *E. E. Wagner,* of Mitchell, for Respondents.

CAMPBELL, J. Defendant Henry E. O'Brien was appointed administrator of the estate of Edward O'Brien, deceased, February 17, 1923, and entered upon the administration of such estate in due course with defendant Hartford Accident & Indemnity Company as surety upon his administrator's bond in the penal sum of $22,000. The bond was duly approved by the county court, and, under the terms and conditions of the bond, and the application therefor, the administrator covenanted and agreed with his surety in part as follows:

"That he will immediately upon the approval of this bond by said County Court, deposit in the custody of said surety or in a safe or double-locked box of the Citizens' State Bank of Alexandria, in said Hanson County, all assets of said estate in said principal's possession or control capable of being so deposited of every kind or nature whatsoever, except money, so that they can be withdrawn only with the consent of the surety or its agent at said City of Alexandria, and will hereafter, whenever said principal shall become possessed of any other assets of said estate deposit the same in like manner, and will not sell, exchange, convert into cash, or in any manner dispose of said assets, or any of them, without an order of said court therefor, or the written consent of said surety or its agent. In the event of the sale of any of the securities belonging to said estate, said principal agrees to deposit the proceeds thereof in the said bank in his name as such administrator; and that said principal will immediately upon the approval of this bond by said court, deposit in said bank in his name as such administrator all money belonging to said estate; and that said principal will not withdraw any of the sums so deposited except upon a check signed by him as such administrator and countersigned by the said agent of said surety, and that said principal will at any time upon the receipt of any moneys belonging to said estate immediately

deposit the same in said bank in his name as such administrator and will withdraw the said moneys only in the manner hereinbefore stipulated."

It is alleged in the answer that one of the assets which came into the possession of defendant administrator was a certificate of deposit issued by Citizens' State Bank of Alexandria for the principal sum of $12,000 dated February 21, 1922, payable in twelve months, representing a deposit of that amount made by the decedent in that bank. It is further alleged that, after his qualification and about March 12, 1923, defendant administrator surrendered said certificate of deposit to the issuing bank and took a new certificate for like amount payable to his order as administrator for the same principal sum of $12,000; that on March 31, 1923, this certificate in turn was surrendered and a new certificate taken in the name of defendant administrator for $11,000, the difference of $1,000 in principal being credited to said administrator upon open checking account for use in connection with administration; and that thereafter, and on August 13, 1923, the certificate of deposit last mentioned was surrendered with credit for interest and a new certificate in the principal sum of $11,000 was taken by the administrator. In any event, it is conceded by all parties to this case that on or about August 21, 1923, defendant administrator received from Citizens' State Bank of Alexandria a certificate of deposit dated on that day for the principal sum of $11,000, and in form as follows:

"Citizens State Bank

"78—790 No. 606.

Alexandria, S. D., Aug. 21, 1923.

"This certifies that Henry E. O'Brien, Adm. of the estate of Edward O'Brien, has deposited in this bank Eleven Thousand Dollars, Insured—Dollars $11,000.00

"Payable to the order of Himself in current funds on the return of this certificate properly endorsed, 6-12 months after date, with interest at the rate of 5 per cent per annum.

"No interest after maturity.

"Not subject to check.

"J. C. Wood, Cashier."

Evidence seems to be lacking in the record, either supporting or contradicting the allegations above mentioned with reference to the origin and previous history of this deposit.

During the course of administration and on August 9, 1923, a disputed claim was filed against the estate which was thereafter rejected and subsequently litigated in the circuit court of Hanson county, S. D., which litigation was not terminated until July 29, 1924, and final decree of distribution was entered in October, 1924.

Meantime, and under date of May 2, 1924, one Agnes Baker, one of the heirs of decedent, had executed a written assignment transferring to plaintiffs in this action her interest in said estate to the extent of $750 for services rendered in her behalf in connection with certain litigation at the January, 1924, term of circuit court in Hanson county, and further services to be rendered, and which were thereafter rendered, in her behalf at the June, 1924, term of said circuit court.

Prior to said assignment to plaintiffs and on or about January 26, 1924, the Citizens' State Bank of Alexandria became insolvent and closed, at which time defendant administrator held the certificate of deposit above set forth, and also had an open checking account in said bank in his name as administrator in the sum of $140.92.

Thereafter plaintiffs instituted this action in the circuit court against defendant administrator and his surety to recover the distributive share of $750 to which plaintiffs were entitled by virtue of the assignment from the heir, Baker, as aforesaid.

It is conceded that defendant administrator duly filed claims for the amount of his checking account and certificate of deposit in connection with the liquidation of the failed bank and has received a 20 per cent dividend thereon, which he has prorated among the distributees named in the final decree of distribution, including a payment of $150 to plaintiffs, and it is conceded that the greatest amount which plaintiffs could recover in this case would be $600, together with interest. The matter duly coming on for trial to the court without a jury, findings, conclusions, and judgment were in favor of the plaintiffs, from which judgment and from an order denying its motion for a new trial defendant Hartford Accident & Indemnity Company has appealed.

The vital question in this case is whether or not defendant administrator, and consequently the surety on his bond, this appellant, became absolutely liable, practically as an insurer, for the $11,000 represented by the certificate of deposit hereinabove set out.

There is no evidence whatever, and in fact we think no claim whatever made, that defendant administrator acted negligently or in bad faith when he made this deposit in the Citizens' State Bank, nor any claim that he knew or should have known of the insolvency or impending failure of said bank at any date before it closed its doors.

The record shows no undue delay or lack of diligence in the administration or closing up of the estate, and it clearly appears that administration could not be closed nor final distribution made during the period from August 9, 1923, to July, 1924, while the disputed claim was being asserted, litigated, and disposed of.

■ The general rule is universally held to be that an executor or administrator may deposit money in bank temporarily as a trust account, if he acts in good faith and with discretion.

"An executor or administrator may deposit money temporarily in some responsible bank or bankinghouse; and if he acts in good faith and with discretion and deposits the money to a trust account, he is not liable for its loss in case of failure of the bank." 11 Cal. Jur. p. 1023.

"It is proper for the executor or administrator, for the purpose of safely keeping the funds of the estate during administration, to deposit the same in a bank, and indeed under some statutes the representative is required or the court is empowered to order him to do so. If the funds are so deposited and due care is used in selecting the depositary, the representative is not necessarily responsible for a loss resulting from the subsequent failure of the bank, the test being whether he has exercised such care as men of common prudence ordinarily exercise in their own affairs." 24 C. J. p. 50.

■ The texts generally seem to indicate, however, that there is some question as to the protection of the executor or administrator where a deposit is not payable on demand or where the executor or administrator parts with his right of exclusive dominion over the deposit.

"* * * Where the representative lends for a fixed time to a bank, instead of making a deposit subject to withdrawal at pleasure or lending as payable on demand, he may incur liability for loss in case of the bank's failure." 24 C. J. 51.

"The liability of an executor or administrator as to the money of an estate in his hands is that of an ordinary bailee for hire. He is not regarded as an insurer, and is not liable for the loss of such property where he has shown good faith, and has acted with the diligence usual with good business men under similar circumstances. Accordingly it is an accepted principle in most jurisdictions that an executor or admnistrator who deposits the moneys of an estate in good faith in a solvent bank of good repute, to the trust account and not to his own account or credit, is not liable for the loss of such money through the subsequent insolvency or failure of the bank. This is especially true when the bank is located in the state of his residence, and he is guilty of no delay in paying out the money so deposited, as soon as those entitled to it will receive it. It seems that the power and duty of depositing money in a bank does not depnd on whether any interest will be received on the deposit. The deposit should be one made in the ordinary manner subject to immediate withdrawal. A permanent deposit in a bank is in the nature of a loan or investment of the trust fund, and is regarded as being on mere personal security, and where such a loan upon personal security is not permissible, the trustee is rendered liable for a loss arising upon such permanent deposit; and an administrator is chargeable for money which he so deposits and afterwards fails to get because of the insolvency of the bank. It seems that an administrator or an executor would not be justified in depositing money in a bank on an account over which he would not have entire control." 11 R. C. L. p. 149.

Appellant in the present case maintains that the administrator is not responsible for the loss of the fund in question, by virtue of the theory which protects a good-faith deposit upon the principles above indicated. Respondents, on the other hand, contend that defendant administrator is not in position to claim protection by virtue of that principle for two reasons: First, because of the "joint control" provision in the bond; and, second, because the transaction between the defendant administrator and the bank was not in fact a deposit, but was a loan.

With reference to the first proposition, respondents maintain that a guardian or administrator who permits his surety to have control over his deposit account, by requiring all checks to be countersigned by the surety before they will be honored, etc., is

liable for loss of the funds through failure of the bank, whether or not the arrangement with the surety was the cause of the loss, upon the theory that the administrator as trustee of the funds has entered into an arrangement with reference to such funds which surrenders or limits his control over the funds whereby he becomes a guarantor thereof, and in this connection respondents cite such cases as White v. Baugh, 9 Bligh. 181, 3 Cl. & Fin. 44; Estate of Bennett Wood, 159 Cal. 466, 114 P. 992, 36 L. R. A. (N. S.) 252; McCollister v. Bishop, 78 Minn. 228, 80 N. W. 1118; Forsyth v. Woods, 11 Wall. 484, 20 L. Ed. 207; and Fidelity & Deposit Co. v. Butler, 130 Ga. 225, 60 S. E. 851, 16 L. R. A. (N. S.) 994. We think it is unnecessary in this case to determine the correctness of the rule promulgated by the cases last above mentioned. It is true that in this case the bond, by its terms hereinbefore quoted, made provision for joint control, but it is equally true that such provision of the bond was for the benefit of appellant surety and was apparently waived by appellant, for the record discloses that the right of joint control provided for in the bond was never exercised. The bank was the one decedent had patronized in his lifetime, and the administrator simply continued to make use of the same bank. It affirmatively appears from the record before us that, as a matter of fact, regardless of the provisions of the bond, control of the deposit in bank, both the certificate of deposit and the open checking account, was at all times exercised solely and exclusively by defendant administrator, and appellant surety did not participate therein. Inasmuch as the joint control provision in the bond was never exercised or availed of by appellant surety, we do not think the mere existence of such provision in the bond can have any effect upon this case one way or the other, or can, by its mere unexercised existence, render either defendant administrator or appellant surety liable as guarantors or absolute insurers.

■■ Coming to the second proposition, we face a question concerning which a court may proceed in almost any direction and find supporting authority.

Section 3383, R. C. 1919, provides as follows: "Pending the settlement of any estate on the petition of any party interested therein, the county court may order any moneys in the hands of the executor or administrator to be invested for the benefit of the estate, in securities of the United States. Such order can only be

made after publication of notice of the petition in some newspaper to be designated by the judge."

It is doubtless the law that permissible "investments" by executors or administrators are limited to those specified in the statute last above quoted. The word "investment" has been variously defined in the cases with some considerable attention to the circumstances of the inquiry in each particular case. It has been held that any deposit in a bank which bears interest is an "investment," whether the deposit is for a fixed period or not. See State v. Marron (1913) 18 N. M. 426, 137 P. 845, 50 L. R. A. (N. S.) 274, and case note.

On the other hand, it has been held that deposit of money in a bank at interest temporarily pending closing of administration, under statutes similar to our own above quoted, is not an "investment" in any such sense as contemplated by the statute, and therefore is not by implication forbidden by such statutes specifying affirmatively what "investments" an executor or administrator may make and how he must make them. See Thompson v. Orchard State Bank (1924) 76 Colo. 20, 227 P. 827, 37 A. L. R. 115; In re Davis' Estate (1907) 35 Mont. 273, 88 P. 957.

We are of the opinion that the view of the cases last above cited is correct, and that such deposit at interest is not an "investment" within the statute and is not impliedly forbidden by the statute.

We come then to consider the question of the nature of the transaction between the bank and the defendant administrator in this case, particularly with reference to whether or not the same constituted a "loan" within the principle which forbids any trustee from loaning out the trust funds upon mere personal security.

There are probably few matters concerning which more confusion exists in the reports than the question of the exact nature of the relation between a bank and its depositing customer, particularly when the deposit is represented by a certificate of deposit. Section 1034, R. C. 1919, defines a loan of money in the following language: "A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed. A loan for mere use is governed by the article on loan for use."

It can hardly be questioned but that the ordinary deposit in

bank comes within the definition of that statute, excepting perhaps that in the case of the checking account particularly there is not, strictly speaking, any agreement to return an equivalent sum at a future time as an entity, but the agreement is rather to repay the deposited money piece-meal as checks are drawn against the account, whereas the usual loan is an entity and is not subject to be demanded in fractional amounts.

On the other hand, if by a certain transaction a loan is made to a bank, it would seem necessarily to follow that, by the same transaction, the bank borrows money. Yet it seems very clear that, where money is simply deposited in a bank in the customary and usual manner and the depositor takes therefor a certificate of deposit with interest at the legal rate, no one would contend that a loan had been made or that the bank had borrowed money within the contemplation of chapter 53, Laws 1927 (amending chapter 92, Laws 1925, amending chapter 124, Laws 1919, amending section 8984, R. C. 1919), which provides that "it shall be unlawful for any bank to issue its certificates of deposit for the purpose of borrowing money, * * *" and that "in all cases where money is borrowed a bank shall issue its 'bills payable' and shall show the true amount of borrowed money on its books, and in all reports and statements required by the provisions of this chapter, under 'bills payable.' "

Admittedly, upon the making of a deposit the relation of debtor and creditor comes into existence between the bank and the customer. This court has considered somewhat of the matter on numerous occasions. In Allibone v. Ames (1896) 9 S. D. 74, 68 N. W. 165, 166, 33 L. R. A. 585, this court held that a general deposit subject to check was not a loan, but indicated obiter that a deposit for a fixed period would be a loan, by the following language: "When the deposit is made for a fixed period, during which the depositor has no right to demand a return of the money, the transaction may be regarded as in all substantial respects a loan, but herein lies an essential distinction between a loan and a general deposit. In the former the person receiving the money agrees to return it at a future time; in the latter, at any time it is demanded. If it is agreed that the money shall remain for a fixed period, there is a loan, and not a deposit."

In Tobin v. McKinney (1900) 14 S. D. 52, 84 N. W. 228, 91

Am. St. Rep. 688, this court held that a certificate of deposit "payable * * * on return of this certfiicate properly indorsed. With interest at 6 per cent per annum if left 6 months"—was a deposit and did not become due until demand was made, and the decision was affirmed on rehearing. Tobin v. McKinney, 15 S. D. 257, 88 N. W. 572, 91 Am. St. Rep. 694. In Mumford v. Rood (1915) 36 S. D. 80, 153 N. W. 921, where a guardian kept money of his ward in a bank on certificates of deposit drawing interest and coming due in four and six months, the court constantly spoke of the situation as a loan to the bank. In First National Bank v. Hirning (1925) 48 S. D. 417, 204 N. W. 901, this court held that a certificate of deposit drawing interest at a greater rate than was allowed by law was, in substance, "a mere loan" to the bank, and that the holder of such certificate was not a good-faith depositor of the bank within the meaning of the Guaranty Fund Law (Rev. Code 1919, § 9020). In City of Sisseton v. Western Surety Co. (1926) 50 S. D. 205, 208 N. W. 982, this court held that the transaction represented by a time certificate of deposit was a deposit and not a loan, and distinguished Allibone v. Ames, supra, on the ground that section 8977, R. C. 1919, in its definition of "deposit," specifically includes a time deposit.

The nature of the transaction represented by the issuance of a certificate of deposit is the subject of a monographic note to the case of Hillsinger v. Georgia Ry. Bank, 108 Ga. 357, 33 S. E. 985, 75 Am. St. Rep. 42, at page 43.

It will be observed that there was a very considerable tendency among the earlier cases to treat every time deposit as a loan upon time.

"With respect to these sums of 956 pounds and 209 pounds, I have no doubt: if the executors had stated in their answer that it was necessary for the purposes of the will to have a balance in hand, and that they had kept these sums in the hands of the bankers, it would be a subject of excuse; but as I understand the facts, they are quite inconsistent with such a statement; for the debts and all the pecuniary legacies seem to have been paid very shortly after the death of the testator; 956 pounds was given to the bankers on a security on which they were to pay interest, and the same appears to have been done as to 209 pounds. These sums were improperly lent on the personal security of the bankers; the

trustees, therefore, became answerable." Darke v. Martyn (1839) 1 Beav. 525, 17 Eng. Ch. 526, 48 Eng. Rep. Reprint, 1044.

"Conceding that Raplee was a banker, and his bank a proper place to deposit trust-money in, yet a deposit made under an agreement to pay in six months or after the lapse of any other number of months rendered the transaction a loan upon time, and such a loan imposed the risk of loss upon the special administrator." Baskin v. Baskin (1871) 4 Lans. (N. Y.) 90.

"The certificate of deposit in this case is of the same form as the one in Frankenfield's Appeal, 11 Wkly. Notes Cas. [Pa.] 373, and it was undoubtedly evidence of a loan for 12 months, at 4 per cent interest of the amount deposited. Upon the considerations mentioned in the opinion in that case the administrator, D. M. Harman, who made the loan, must suffer the loss resulting from the insolvency of Henderson, unless there is something in the present case to take it out of the operation of the decision in Frankenfield's Appeal." Baer's Appeal (1889) 127 Pa. 360, 18 A. 1, 4 L. R. A. 609.

With the growth of deposit banking, however, in modern times, as a customary commercial transaction, the courts have tended more and more to consider certificates of deposit as evidence of a deposit rather than a loan.

"A promissory note ordinarily represents a loan or its equivalent, and it is generally the duty of the debtor to seek the creditor and pay him, and it was for the protection of the debtor that demand notes were originally held to be due at once. Deposits are made in a bank in accordance with the universal commercial usage, which becomes a part of the law of the transaction. They are neither loans, nor bailments in the strict sense of the term. A deposit is a transaction peculiar to the banking business, and one that the courts should recognize and deal with according to commercial usage and understanding. The primary purpose of a general deposit is to protect the fund, and some of the incidental purposes thereof are the conveniences of checking and transacting large business interests without keeping and handling large sums of money. The transaction is in reality for the benefit and convenience of the depositor, and while the relation of debtor and creditor exists, and the bank has the use of the money for commercial gain, it assumes no further obligation than to pay the

amount received when it shall be demanded at its banking house." Elliott v. Capital City State Bank (1905) 128 Iowa, 275, 103 N. W. 777, 778, 1 L. R. A. (N. S.) 1130, 111 Am. St. Rep. 198.

To the same general effect, see In re Olson's Estate (1928) 206 Iowa, 706, 219 N. W. 401; Southern Surety Co. v. Ruark (1923) 97 Okla. 268, 223 P. 622.

"While the certificate of deposit is a promissory note, and is negotiable, nevertheless the transaction out of which it arises is a deposit, and not a loan. An ordinary deposit in the usual course of business, while it creates the relation of debtor and creditor, is not a loan to the bank." Officer v. Officer, 120 Iowa, 389, 94 N. W. 947, 98 Am. St. Rep. 365; Hunt v. Hopley, 120 Iowa, 695, 95 N. W. 205.

"The word 'deposit,' according to its commonly accepted and generally understood meaning among bankers and by the public, includes not only deposits payable on demand and subject to check, but deposits not subject to check, for which certificates, whether interest-bearing or not, may be issued, payable on demand, or on certain notice, or at a fixed future time." McCormick v. Hopkins (1919) 287 Ill. 66, 122 N. E. 151, 153.

Certificates of deposit in this state at least have customarily been issued in two forms as to payment date—one of the type described in Allibone v. Ames, 9 S. D. 74, 68 N. W. 165, 33 L. R. A. 585, supra, where payment is provided to be made at any time upon the return of the certificate properly indorsed with a condition that interest will be paid at a certain rate if the deposit is left for six or twelve months; and the other, the form represented in the instant case, where the provision is that the certificate is payable on its return properly indorsed either six or twelve months after date. There was affirmatively proved in the instant case a general custom of banks in the vicinity, including the bank which issued this certificate, to disregard any distinction in form between the two types of certificates and to treat all of the certificates as demand certificates, payable whenever presented, with the limitation that, if presented and payment made before the expiration of six months, no interest would be paid, and, if presented and payment made between six months and twelve months, only six months' interest would be paid. This custom and practice of banks in this state has been so widespread and universal that it might well be subject to judicial notice.

 This phase of the case is not entirely without difficulty. While we do not think a deposit of money in a bank is necessarily an "investment" merely because it bears interest, nevertheless, if the practice was continued over a period of years in the form of time certificates, renewed as they come due, as was the case in Mumford v. Rood, 36 S. D. 80, 153 N. W. 921, supra, such practice might well be deemed to amount to an investment of funds. We do not believe, however, that there was any such transaction between defendant administrator and the bank in the instant case as could be held to constitute an "investment" within the meaning of section 3383, R. C. 1919.

We do not wish to establish any general rule to the effect that an executor or administrator is authorized to part with the control of trust funds in his hands for any fixed period of time, either to a bank or to any one else, or to loan the same upon mere personal security. It is, we think, very doubtful whether the general custom and practice of treating time certificates as in substance demand certificates could be shown as between the bank and the depositor to contradict the terms of the written time certificate, or could be availed of, as a matter of law, to compel the bank to pay a time certificate at a date earlier than the due date specified in the writing itself.

In the instant case, however, we think the defendant administrator was justified, by reason of the existence of such general custom and practice, in believing that the deposited money would be paid to him at any time upon demand (without interest if demanded prior to six months), regardless of the fact that the written certificate specified its due date as either six or twelve months after date of issue, and there is nothing in this record to show or in any manner indicate that the certificate would not, as a matter of fact, have been paid whenever demand was made.

The defendant administrator, under the circumstances presented by this record, was plainly justified in depositing the money in his hands in a bank of good repute, whose solvency he had no reason to doubt. Defendant administrator would have been fully protected in the making of such deposit beyond question if he had made the same in the form of a general deposit subject to check, or if he had taken for the same a certificate of deposit payable by its express written terms upon demand. By virtue of the existent

general custom and practice, defendant administrator believed, and was justified in believing, that the certificate of deposit which he did take, regardless of its form, would be paid whenever demand was made. It does not appear from this record that the fact that the certificate of deposit was, according to its written terms, payable at a fixed future date instead of on demand, in any manner contributed to the loss of the money, or that defendant administrator ever made demand for the money and was prevented from receiving it by reason of the form of the certificate of deposit. In fact, every inference is to the contrary, for when the bank closed defendant administrator lost therein, not only the deposit represented by the certificate in question, but also the balance in his open checking account, which was certainly payable upon demand at any time.

Under all the circumstances of this case, in view of the fact that the administrator would have been fully protected had he made this same deposit and taken a demand certificate therefor, and in view of his justifiable belief that the time certificate which he took would, notwithstanding its terms, be treated by the bank as a demand certificate, and in view of the fact that the form of the certificate did not in any manner contribute to the loss, we think it would be highly unjust to hold the administrator, or his surety, personally liable merely because of the form of the certificate of deposit. We are therefore of the opinion that, upon the facts shown by this record, the executor did not exceed his authority when he made the deposit in question and took therefor the certificate of deposit that he did take, and that the making of such deposit and the taking of such certificate, whether or not it might be technically deemed a "loan" within some definitions of the word, nevertheless did not amount to a "loan" in any such sense as to impose liability upon defendant administrator, or his surety, as an unauthorized loan of trust funds upon mere personal security; nor was it an "investment" within the implied prohibition of section 3383, R. C. 1919.

The judgment and order appealed from are therefore reversed. and the cause remanded, with directions to enter judgment in favor of appellant in harmony with the views herein expressed.

BURCH, and WARREN, JJ., concur.
POLLEY, P. J., and ROBERTS, J., dissent.