Sterlin P. JONES *v.* Brian GOODSON

89-58                                                      772 S.W.2d 609

Supreme Court of Arkansas
Opinion delivered July 10, 1989

*Raymond Harrill*, for appellant.

*Ivester, Henry, Skinner & Camp*, for appellee.

TOM GLAZE, Justice. This is a tort case in which Brian Goodson sued his stepfather, Sterlin P. Jones, and obtained a judgment awarding damages in the amount of $27,500. In an effort to satisfy his judgment, Goodson caused writs of garnishment to be issued against banks which held accounts on behalf of Jones. In addition, Goodson caused a writ of execution to be issued for purposes of levying upon Jones's wheelchair which was valued at approximately $4,000. Jones objected to the writs of execution and garnishment issued under Ark. Code Ann. § 16-110-402 (Supp. 1987). He argued that the wheelchair and bank accounts were exempt from execution and garnishment under federal laws pertaining to Veterans Administration and Social Security benefits. The trial court rejected Jones's contention as to the accounts, which consisted of certificates of deposit purchased with veteran benefits, but held his wheelchair and any social security funds were exempt. Jones appeals from the ruling that the accounts consisting of veterans benefits are subject to garnishment, and Goodson cross-appeals from the ruling that the wheelchair and the funds consisting of social security benefits are exempt from process. We reverse the trial court's holding in Jones's direct appeal and affirm its decisions on cross-appeal.

### 1. *Veterans Administration Benefits*

In the direct appeal, the parties' first argument concerns whether certificates of deposit purchased with veterans benefits are exempt under 38 U.S.C. § 3101(a) (1988), which provides in pertinent part as follows:

> Payments of benefits due or to become due under any law administered by the Veteran's Administration . . . shall be exempt from the claim of creditors, levy, or seizure by or under any equitable process whatever, either before or after receipt by the beneficiary.

In considering the foregoing law, the Supreme Court in *Porter* v.

*Aetna Casualty Co.*, 370 U.S. 159 (1962), stated that such legislation should be liberally construed to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof. The Court observed that the Congress intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose — provided that the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments. In applying these guidelines, the *Porter* court held a veteran's benefits which were deposited in a federal savings and loan account were exempt from attachment. *Cf. Trotter* v. *Tennessee*, 290 U.S. 354 (1983) (court held that land purchased by the guardian with veteran benefits was not exempt); *Carrier* v. *Bryant*, 306 U.S. 545 (1939) (court held that United States bonds purchased from veteran's benefits were not exempt from execution); *Lawrence* v. *Shaw*, 300 U.S. 245 (1937) (court held that bank credits derived from veteran's benefits were within the exemption).

In *Fayette County Hosp.* v. *Reavis*, 523 N.E.2d 693 (Ill. App. 3d 1988), the Illinois Court of Appeals held that a judgment debtor's certificate of deposit, which was purchased solely with social security benefits and payable upon his death to a funeral home, was exempt from garnishment under 42 U.S.C. § 407 of the Social Security Act. That Act provides that "none of the monies paid or payable or rights existing [under the social security act] shall be subject to execution, levy, attachment, garnishment, or other legal process . . ." The court concluded, citing *Philpot* v. *Essex County Welfare Bd.*, 409 U.S. 413 (1973), that the funds in a certificate of deposit were readily withdrawable, retained the "quality of money," had not become a permanent investment, and were thus exempt under § 407(a). Significantly, the Supreme Court in *Philpot* reviewed its decision in *Porter* and determined that the analysis used with respect to veterans benefits under 38 U.S.C. § 3101(a) is applicable to social security benefits.

■■ In the instant case, it was undisputed that Jones had immediate access to the funds as needed and that while there would be a penalty of loss of interest for early withdrawal, the

principal would be unaffected. We note also that legislation of this type should be liberally construed to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof. *Porter*, 370 U.S. 159. In sum, since the funds in question were readily withdrawable, retained the quality of money, and had not become a permanent investment, we reverse the trial court's finding that the veterans administration funds were nonexempt.

■ Citing *Rose v. Rose*, 107 S. Ct. 2029 (1987), Goodson argues that the exemption provided in § 3101(a) does not apply to family members and that as a stepson of Jones, he is a family member in the "strictest sense of the word." We do not address this argument since it was not raised below. *Malakul v. Altech Arkansas, Inc.*, 298 Ark. 246, 766 S.W.2d 433 (1989).

## 2. *Social Security Benefits*

On cross-appeal, Goodson argues that the trial court erred in holding that the social security benefits were exempt from garnishment. This argument is meritless because, as noted above, the exemption in 42 U.S.C. § 407, extends to "moneys paid." *See Bennett v. Arkansas*, 108 S. Ct. 1204 (1988); *Philpot*, 409 U.S. 413. This exemption applies even after the benefits are in the debtor's hands. *Bennett*, 108 S. Ct. 1204; *Philpot*, 409 U.S. 413.

■ In *Philpot*, the Essex County welfare in the state of New Jersey was attempting to garnish funds on deposit in the recipient's account pursuant to the recipient's agreement to reimburse. In denying recovery, the court stated:

> The protection afforded by sect. 407 is to "moneys paid" and we think the analogy to veteran's benefits exemptions which we reviewed in *Porter v. Aetna Casualty Co.*, 370 U.S. 159, is relevant here. We held in that case that veteran's benefits deposited in a savings and loan association on behalf of a veteran retained the "quality of moneys" and had not become a permanent investment. *Id.*, at 161-162.

> In the present case, as in *Porter*, the funds on deposit were readily withdrawable and retained the quality of "moneys" within the purview of sect. 407.

In this case, it is undisputed that Jones's social security benefits were on deposit in his checking account, were readily withdrawable, and had not been invested in any manner. Accordingly, the trial court did not err in holding that the social security benefits were exempt from execution.

### 3. *The Wheelchair*

Finally, Goodson, citing *Porter*, argues that the trial court erred in quashing his writ of execution. *Porter* held that the exemption "shall not extend to any property purchased in part or wholly out of such payments." We first note that the unrebutted evidence at the hearing revealed that Jones's wheelchair was purchased with the approval of the Veterans Administration. In other words, the wheelchair was a direct benefit from the Veterans Administration as opposed to personal property that was purchased in part, or wholly, out of payments.

Moreover, we feel that allowing the writ of execution in this case would contravene the intent of Congress which is to exempt from legal process those benefits which are necessary for the maintenance and support of the veteran, in this case, the wheelchair. There was unrebutted testimony at the hearing that Jones, who has Parkinson's disease, needed a mechanized wheelchair for mobility because he could not operate a standard wheelchair very well. It bears repeating that legislation of this type should be liberally construed to protect funds granted by the Congress for the maintenance and support of beneficiaries thereof. Accordingly, we have no hesitation in holding that the trial court was correct in quashing Goodson's writ of execution.