**In re Margaret FRAZIER, Debtor.**

**Bankruptcy No. 90–11013 M.**

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Oct. 8, 1991.

---

Andree L. Roaf, Little Rock, Ark., for debtor.

A.L. Tenney, Trustee, N. Little Rock, Ark., for Sam Antoon.

Teresa Wineland, El Dorado, Ark.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On January 23, 1990, Margaret Frazier (debtor) filed a voluntary petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code. The debtor's schedules reflect assets totaling $63,106.64. The assets include two certificates of deposit (CDs) in the principal sums of $1,000.00 and $9,000.00. The assets also include $40,550.00 in property that the debtor claims as exempt, consisting of the debtor's homestead valued at $40,000.00, household furnishings valued at $500.00, and wearing apparel valued at $50.00. The debtor's secured claims total $45,733.59, including the claim of First National Bank of El Dorado (FNB) in the amount of $34,580.91.[1] The schedules reflect unsecured claims totaling $45,421.04, including the claim of Sam J. Antoon (Antoon) in the amount of $10,435.87.

On February 9, 1990, the debtor filed a proposed plan of reorganization. Antoon and the standing chapter 13 trustee (trustee) filed objections to the debtor's plan, and a confirmation hearing was held on May 24, 1990. The Court took the matter under advisement.

The matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to enter a final judgment in this cause.

## BACKGROUND

The debtor is a widow and is supporting her daughter, Cathy Frazier, who is attending college. The debtor owns and operates a beauty shop in Union County, Arkansas. The equipment and supplies in the beauty shop are valued in the debtor's schedules at $450.00.

FNB is a creditor of the debtor whose debt is evidenced by five promissory notes. One note has an unpaid balance of $24,450.00 and is secured by a first lien in the debtor's homestead. A witness for FNB estimated that "probably more than $24,000.00 in equity exists in the debtor's homestead." Three of the other five promissory notes totaling $11,930.28 have unpaid balances of $5,033.76, $3,451.45, and $3,445.07, respectively. Each of these three notes matured since the filing of this bankruptcy. The fifth promissory note is fully secured by the debtor's automobile.

FNB has possession of the debtor's two CDs in the principal sums of $1,000.00 and $9,000.00. The CDs were issued in the names of "Richard Frazier or Margaret Frazier or Cathy Frazier—either or survivor." Richard Frazier, the debtor's husband and Cathy Frazier's father, now deceased, was the source of the funds used to purchase the CDs. The debtor pledged the $1,000.00 CD as collateral for the three promissory notes totaling $11,930.28. The $9,000.00 CD is not pledged as collateral on any of the debtor's notes with FNB, and FNB has possession of the $9,000.00 CD only as a convenience to the debtor. The debtor uses the interest income from the CDs to defray living expenses. Although FNB has a right of setoff, it has opted not to exercise its right in order to assist the debtor in her reorganization efforts.

On July 7, 1988, the Circuit Court of Union County, Arkansas, entered a judgment in favor of Antoon against the debtor in the amount of $9,500.00. At Antoon's request, the Union County Circuit Clerk

---

1. The schedules are not consistent with the evidence as detailed hereinafter.

issued a writ of execution, which was received by the Union County Sheriff on December 22, 1989. The bankruptcy petition was filed January 23, 1990, and the Sheriff returned the writ of execution on January 29, 1990, without levying on any of the debtor's property.

Antoon objects to confirmation of the debtor's proposed plan on the basis that his claim is misclassified as an unsecured claim. Antoon argues that his claim should be treated as a secured claim because he held an execution lien in the debtor's bank deposits on the date the petition was filed.

## DOES THE LIEN OF THE WRIT OF EXECUTION ATTACH TO THE DEBTOR'S BANK DEPOSITS?

 Deposits, including certificates of deposit, are defined as:

not only deposits payable on demand and subject to check, but deposits not subject to check, for which certificates, whether interest-bearing or not, may be issued, payable on demand, or on certain notice, or at a fixed future time.

*Black's Law Dictionary* 438 (6th ed. 1990), quoting *Jones v. O'Brien*, 58 S.D. 213, 235 N.W. 654, 659 (1931). Money deposited by a customer with a banking institution as a general deposit is not a loan to the bank, even though legal title to the money passes to the bank and a debtor-creditor relationship is created. *Lasley v. Bank of Northeast Arkansas*, 4 Ark.App. 42, 627 S.W.2d 261 (1982); *Warren v. Nix*, 97 Ark. 374, 135 S.W. 896 (1911). The property interest which remains vested in the depositor is in the nature of a chose in action, which is an equitable interest. *See* 11 U.S.C. § 541; *Miller v. Wells Fargo Bank Int'l Corp.*, 406 F.Supp. 452 (S.D.N.Y.1975), *aff'd*, 540 F.2d 548 (2d Cir.1976), cited in *Wightman v. American Nat'l Bank of Riverton*, 610 P.2d 1001 (Wyo.1980); *In re Estate of Shoptaugh*, 482 N.E.2d 1142 (Ind.Ct.App. 1985); *Walton v. Piqua State Bank*, 204 Kan. 741, 466 P.2d 316 (1970); *Gallagher v. Rogan*, 322 Pa. 315, 185 A. 707 (1936); 4 *Collier on Bankruptcy* ¶ 541.10[5] (15th ed. 1989); 30 Am.Jur.2d *Executions* § 136 (1967).

At common law, an equitable property interest of a judgment debtor was not subject to seizure and sale by execution. *Van Ness v. Hyatt*, 38 U.S. (13 Pet.) 294, 10 L.Ed. 168 (1839); *Pennington's Ex'r v. Yell*, 11 Ark. (6 Eng.) 212 (1850); 30 Am. Jur.2d *Executions* § 136 (1967); 33 C.J.S. *Executions* § 125 (1942). However, this common law rule was modified by statute during the October, 1837, session of the Arkansas General Assembly.

On March 3, 1838, the legislature approved a statute dealing with executions, which included some equitable interests in property. This statute provided in relevant part as follows:

The following described property shall be liable to be seized and sold under any execution upon any judgment, order or decree of a court of record: First, all goods and chattels not hereinafter exempted. Second, all improvements on the public lands of the United States. Third, all slaves, and other rights and shares in the stock of any bank, insurance company, or other incorporation. Fourth, any current gold and silver coin, which shall be returned as so much money collected, without exposing the same to sale. Fifth, any bill or other evidence of debt issued by any moneyed [c]orporation of this State or any other State[.]

Ark.Rev.Stat., ch. 60, sec. 23 (1837). The lien of a writ of execution exists from the date the writ is delivered to the proper sheriff for execution. Ark.Code Ann. § 16–66–112 (1987); *Consol. Underwriters of South Carolina, Ins. Co. v. Bradshaw*, 136 F.Supp. 395 (W.D.Ark.1955); *Charlesworth Pontiac Co. v. Walker*, 238 Ark. 940, 385 S.W.2d 797 (1965); *Hanover & Co. v. Casey, Adm'r*, 26 Ark. 352 (1870); *Baldwin v. Johnston*, 8 Ark. (3 Eng.) 260 (1848).

Section 16–66–201(5) of the current execution statute, which is at issue in this case, contains language similar to the original statute by subjecting the following property to seizure and sale pursuant to a writ of execution:

Any bill or other evidence of debt issued by any moneyed corporation of this state or any other state, belonging to any

person against whom an execution shall be issued, at the time the writ is delivered to the officer to be executed, or any time thereafter[.]

Ark.Code Ann. § 16–66–201(5) (1987).

■ Antoon argues that the debtor's interest in her bank deposits is the equivalent of a bill of debt issued by a moneyed corporation. This argument is without merit. *Black's Law Dictionary* defines "bill of debt" as "[a]n ancient term including promissory notes and bonds for the payment of money." *Black's Law Dictionary* 165 (6th ed. 1990). The term "bill of debt" does not describe any modern commercial paper. Professor Williston points out that "[t]he law of bills and notes has its historical basis in the so-called law merchant, that is, the customs of international trade as they were developed during the late Middle Ages." 10 *Williston on Contracts* § 1135 (3d ed. 1967). In a treatise written in 1686, the author described a bill of debt and provided an appropriate form to be followed by a merchant. The description and form were as follows:

> The most usuall buying and selling of Commodities beyond the seas, in the course of Traffick, is by Bills of Dept, or Obligations, called Bills Obligatory, which one Merchant giveth unto another for Commodities bought or sold, which is altogether used by the Merchants Adventurers at Amsterdam, Middleborough, Hamborough, and other places: for when they have sold their Clothes unto other Merchants or others, payable at 4, 6, 8, or more months, they presently transferr and set over these Bills (so received for the payment of their Clothes) unto other Merchants, and take for them other Commodities at such prices as they can agree....
>
> ....

Form of Bills Obligatory.

I A.B. Merchant of Amsterdam do acknowledge by these presents to be truely in-Debted to the honest C.D. English Merchant dwelling at Middleborough, in the summ of five hundred pounds current Money for Merchandise, which is for Commodities received of him to my contentment, which summ of five hundred pound as aforesaid, I do promise to pay unto the said C.D. (or the bringer hereof) within six months next after the date of these presents: In witness whereof I have subscribed the same at Amsterdam the 10 of July 1622, *Stilo novo,*

A.B.

Gerard Malynes, *Consuetudo, vel, Lex Mercatoria: or, the Ancient Law–Merchant,* First Part, 71, 74 (Abingdon, England, Professional Books Ltd., 1981) (1686). A bill of debt appears to be the ancient predecessor of a promissory note or a corporate debenture,[2] not a bank account. The law of bills and notes is governed by the provision of Article 3 of the Uniform Commercial Code (Ark.Code Ann. § 4–3–101 to –805 (1987 and 1991 Supp.Vol. 2)). The term "bill of debt" in the current execution statute is meaningless because the law in this area is superseded by the provisions of the Uniform Commercial Code. *See* Ark.Code Ann. § 4–1–103 (1987).

None of the reported cases dealing with attempts to collect monies held in a bank account to the credit of a judgment debtor involve a writ of execution, instead the cases refer to writs of garnishment or attachment. *See, e.g., Jones v. Goodson,* 299 Ark. 495, 772 S.W.2d 609 (1989); *Joey Brown Interest, Inc. v. Merchants Nat'l Bank of Ft. Smith,* 284 Ark. 418, 683 S.W.2d 601 (1985); *Gen. Elec. Co. v. M & C Mfg., Inc.,* 283 Ark. 110, 671 S.W.2d 189 (1984); *Sharum v. Dodson,* 264 Ark. 57, 568 S.W.2d 503 (1978).

Therefore, Antoon's writ of execution did not create a lien in the debtor's bank deposits.

## DOES THE LIEN OF THE WRIT OF EXECUTION ATTACH TO THE DEBTOR'S EQUIPMENT AND SUPPLIES?

Antoon also argues that his writ of execution creates an execution lien on the

2. Debenture is defined as "[a] promissory note or bond backed by the general credit and earning history of a corporation and usually not secured by a mortgage or lien on any specific property; e.g., an unsecured bond." *Black's Law Dictionary* 401 (6th ed. 1990).

equipment and supplies located at the debtor's beauty shop in Union County, Arkansas. The writ of execution was received by the Union County Sheriff on December 22, 1989. The debtor owned certain equipment and supplies located in her beauty shop in Union County, Arkansas, on the date the writ of execution was received by the sheriff. Since the lien of a writ of execution attaches when the writ of execution is placed in the hands of the sheriff, the evidence established that Antoon's execution lien was perfected in the beauty shop equipment and supplies on the date the petition was filed. The schedules value this property at $450.00. No other evidence was presented as to the value of the equipment and supplies. Therefore, Antoon's claim is determined to be secured in the amount of $450.00 and unsecured as to the balance of his claim.

## MARSHALING

The trustee objects to confirmation of the debtor's plan because the plan violates 11 U.S.C. § 1325(a)(4) in that the unsecured creditors are receiving less than they would receive in a chapter 7 case. The trustee bases his objection on the argument that a chapter 7 trustee could require FNB to marshal its debt by foreclosing first on the debtor's homestead, thereby releasing FNB's lien and extinguishing its right of setoff in the CDs.[3]

■ Marshaling is an equitable doctrine that is usually applied in situations where one creditor has a first lien on two separate assets, and another creditor has a second lien on only one of the two assets. Under this doctrine, the party having the first lien is compelled in equity to first exhaust the asset upon which the second creditor has no lien. *Duck v. Wells Fargo Bank, N.A. (In re Spectra Prism Indus., Inc.)*, 28 B.R. 397 (Bankr. 9th Cir.1983); *United States v. Gleneagles Inv. Co., Inc.*, 584 F.Supp. 671 (M.D.Pa.1984); *Bagley v. Weaver*, 72 Ark. 29, 77 S.W. 903 (1903).

■ An exception to this equitable principle arises when the property to be marshaled is the debtor's homestead. Under Arkansas law, marshaling is not applied to liquidate a homestead first, even if the other creditor's lien will be extinguished. *Bank of Hoxie v. Graham*, 184 Ark. 1065, 44 S.W.2d 1099 (1932) (one whose homestead is mortgaged is entitled to demand that the mortgagee proceed first against the nonhomestead property). *Accord Meyer v. United States*, 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963), citing *Sims v. McFadden*, 217 Ark. 810, 233 S.W.2d 375 (1950). Therefore, creditors in a hypothetical chapter 7 proceeding would not receive more than this plan proposes.

## CONCLUSION

For the reasons stated herein, the Court finds that Antoon's objection to confirmation is sustained. Antoon's claim must be treated as a secured claim in the amount of $450.00 and an unsecured claim for the balance. The trustee's objection to confirmation is overruled. The debtor has twenty days to file a modified plan consistent with this order.

IT IS SO ORDERED.

---

**3.** The trustee's argument assumes that a chapter 13 trustee may assume the status of a judgment lien creditor under 11 U.S.C. § 544 for purposes of the marshaling doctrine. Since the trustee's argument is without merit for other reasons, it is unnecessary to decide the status of the chapter 13 trustee under 11 U.S.C. § 544.