## BENNETT v. ARKANSAS

No. 86–6124.   Argued March 2, 1988—Decided March 29, 1988

*Thomas M. Carpenter*, by appointment of the Court, 484 U. S. 921, argued the cause for petitioner.   With him on the brief were *Charles L. Carpenter* and *Charles L. Carpenter, Jr.*

*Richard J. Lazarus* argued the cause for the United States as *amicus curiae* urging reversal.   On the brief were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Merrill, Charles A. Rothfeld, John F. Cordes,* and *John P. Schnitker.*

*J. Steven Clark*, Attorney General of Arkansas, argued the cause for respondent.   With him on the brief was *Clint Miller*, Assistant Attorney General.*

---

*\*Michael John Mirra* and *Robert A. Stalker* filed a brief for Lawrence McDowell as *amicus curiae* urging reversal.

PER CURIAM.

This case involves an attempt by the State of Arkansas to attach certain federal benefits paid to individuals who are incarcerated in Arkansas prisons. In 1981, Arkansas adopted the State Prison Inmate Care and Custody Reimbursement Act, Ark. Stat. Ann. § 46–1701 *et seq.* (Supp. 1985), a statute that authorizes the State to seize a prisoner's property or "estate" in order to help defray the cost of maintaining its prison system. The Act specifically defines "estate" to include a prisoner's federal Social Security benefits, as well as other types of pension or retirement benefits. § 46–1702(d).[1] The State filed separate actions in state court seeking to attach Social Security benefits that had been paid to petitioner Bennett and Veterans' Administration (VA) disability pension benefits that were paid to another inmate, Shelton. In relevant part, the inmates responded by arguing that the Arkansas statute violates the Supremacy Clause of the Federal Constitution because it permits the State to attach funds that federal law exempts from legal process. In particular, petitioner pointed to 42 U. S. C. § 407(a) (1982 ed., Supp. III), which provides that "none of the moneys paid or payable . . . under [the Social Security Act] shall be subject to execution, levy, attachment, garnishment, or other legal process." Similarly, Shelton contended that attachment of his VA benefits is inconsistent with 38 U. S. C. § 3101(a), which provides that such benefits "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or

---

[1] Arkansas Stat. Ann. § 46–1704(a) (Supp. 1985) provides that the estate of a person incarcerated in a penal facility of the Arkansas Department of Correction "may be subjected to the payment to the State of the expenses paid and to be paid by it on behalf of said person as a prisoner." Arkansas Stat. Ann. § 46–1702(b) (Supp. 1985) defines "estate" as "any properties, tangible or intangible, real or personal, belonging to or due an inmate confined to an institution of the Department of Correction, including income or payments to such inmate from Social Security, previously earned salary or wages, bonuses, annuities, pensions or retirement benefits, or from any source whatsoever."

under any legal or equitable process whatever, either before or after receipt by the beneficiary."

The state trial court rejected the inmates' arguments and directed that a portion of each of their benefits be seized. The Supreme Court of Arkansas affirmed, with one justice dissenting. 290 Ark. 47, 716 S. W. 2d 755 (1986). Briefly stated, the court found that there is no conflict between the federal and state statutes because "the federal statutes contain an implied exception to the exemption from legal process when the State provides for the care and maintenance of a beneficiary of social security or veterans' funds." *Id.*, at 49, 716 S. W. 2d, at 756. We granted Bennett's petition for certiorari. 484 U. S. 895 (1987).[2]

We think—contrary to the conclusion of the Supreme Court of Arkansas—that there is a clear inconsistency between the Arkansas statute and 42 U. S. C. § 407(a) (1982 ed., Supp. III). Section 407(a) unambiguously rules out any attempt to attach Social Security benefits. The Arkansas statute just as unambiguously allows the State to attach those benefits. As we see it, this amounts to a "conflict" under the Supremacy Clause—a conflict that the State cannot win. See *Rose* v. *Arkansas State Police*, 479 U. S. 1 (1986). We reject the State's attempt to avoid this conclusion by arguing that the federal statute contains an "implied exception" that would allow attachment of otherwise exempted federal payments simply because the State has provided the recipient with "care and maintenance." We declined to find such an exception in *Philpott* v. *Essex County Welfare Board*, 409 U. S. 413 (1973), where we held that § 407 bars a State from attempting to attach Social Security benefits as reimbursement for state welfare assistance pay-

---

[2] Shelton's separate petition for certiorari was not docketed by the Court due to his failure to file an affidavit to accompany his motion to proceed *in forma pauperis*. See this Court's Rule 46.1. Accordingly the only issue directly before us is the propriety of the State's attempt to attach Bennett's Social Security benefits.

ments.  *Philpott* may be factually distinguishable on the ground that there the State provided for only *part* of the needs of the Social Security recipient while here the State provides for *all* of the prisoners' needs, see *Department of Health and Rehabilitative Services, State of Fla.* v. *Davis*, 616 F. 2d 828, 830 (CA5 1980) (relying on such a distinction). But we do not think that such a distinction carries the day given the express language of § 407(a) and the clear intent of Congress that Social Security benefits not be attachable.

Nor do we think that the State's "implied exception" argument is supported by our decision last Term in *Rose* v. *Rose*, 481 U. S. 619 (1987).  There we held that 38 U. S.C. § 3101 did not bar a state court from holding a disabled veteran in contempt for failing to pay child support, even though the veteran's only means of paying his obligation was to use his VA disability benefits.  But in that case we held that the benefits in question were designed by Congress to support not only the recipient of the benefits, but also his dependents. Accordingly, allowing the state court in that case to enforce a valid child support order was fully consistent with the underlying intent of § 3101, which was in part to "'prevent the deprivation and depletion of the means of subsistence'" of the beneficiaries of the federal payments.  *Id.*, at 630 (quoting S. Rep. No. 94–1243, pp. 147–148 (1976)).  Here, in contrast, the State cannot be said to be a "beneficiary" of petitioner's Social Security benefits.

The judgment of the Supreme Court of Arkansas is

*Reversed.*