**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 10 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BERTHA TOM,

      Plaintiff-Appellee,

v.

      No. 97-2244

FIRST AMERICAN CREDIT UNION,

      Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-96-1255)

---

Thomas Lynn Isaacson (James Jay Mason on the brief), Mason, Isaacson, &
Macik, P.A., Gallup, New Mexico, for Defendant-Appellant.

Samuel D. Gollis, DNA-People's Legal Services, Inc., Keams Canyon, Arizona,
for Plaintiff-Appellee.

---

Before **BALDOCK** , **MAGILL** ,[*] and **HENRY** , Circuit Judges.

---

**HENRY** , Circuit Judge.

---

    [*]Honorable Frank J. Magill, Senior Circuit Judge, United States Court of
Appeals for the Eighth Circuit, sitting by designation.

The district court granted plaintiff Bertha Tom summary judgment on her claim that defendant First American Credit Union improperly seized the funds in her bank account, and the Credit Union appeals that decision.  We affirm the district court's decision with respect to Mrs. Tom's claims that the Credit Union violated the Social Security and Civil Service Retirement Acts when it seized the contents of her account.  However, because Mrs. Tom waived her breach of contract claim by failing to raise it in her summary judgment papers, we reverse the district court's ruling that the Credit Union's seizure of funds constituted a breach of contract.

## BACKGROUND

In 1989, Mrs. Tom opened an account at what would later become the First American Credit Union.  When she opened this account, she signed a Revolving Credit Plan Agreement that provided as follows:

> [I] hereby pledge all shares and deposits and payments and earnings thereon which [I] have or hereafter may have . . . as security for any and all moneys advanced under this plan . . . and authorize the credit union to apply such shares, deposits and earnings to payment of said obligation.  Such application may be pursuant to such pledge or as a right of offset.

Aplt's App. at 55.  The Agreement also stated that "[i]n the event payment is not made when due, then the entire unpaid balance of all advances made plus interest shall become immediately due and payable without notice at the option of the credit union."  Id.

2

In the fall of 1994, Mrs. Tom's Credit Union account balance was $1,769, a sum that consisted entirely of funds she had received as payments under the Social Security and Civil Service Retirement Acts. The Credit Union informed Mrs. Tom that it intended to deduct funds from her account in order to satisfy an alleged $2,379.20 debt to the Credit Union. The Credit Union claimed this debt was attributable to several loans that Mrs. Tom and her late husband had obtained between 1974 and 1980 but had failed to repay. When Mrs. Tom demanded that the Credit Union turn over the entire balance of her account to her, the Credit Union refused. Some months later, the Credit Union, citing its right to use the funds in her account to offset her alleged $2,379.20 debt, seized the entire $1,769 in Ms. Tom's account.

Mrs. Tom sued the Credit Union in federal court, alleging that the Credit Union's actions (1) violated § 407(a) of the Social Security Act (Count I), (2) violated § 8346(a) of the Civil Service Retirement Act (Count II), (3) constituted a breach of contract (Count III), and (4) violated New Mexico's Unfair Trade Practices Act (Count IV). The parties subsequently stipulated to all of the relevant facts, and both parties moved for summary judgment. The district court granted Mrs. Tom's motion with respect to the first three counts of her complaint and awarded her $1,769 in damages. However, the court ruled for the Credit Union on Count IV, holding that it had not violated New Mexico's Unfair Trade

3

Practices Act. The Credit Union appealed the district court's ruling with respect to the first three counts. Because Mrs. Tom has not cross-appealed the decision regarding the Unfair Trade Practices Act claim, we will only examine the district court's decision regarding the first three counts.

## DISCUSSION

### Standard of Review

We review de novo the district court's grant of summary judgment, applying the same legal standard as the district court. Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1173 (10th Cir. 1996). Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir.), cert. denied, 118 S. Ct. 342 (1997).

### Count I: Social Security Act (42 U.S.C. § 407)

The district court held that the Credit Union's actions violated the Social Security Act's anti-assignment provision. Under this provision, "none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process." 42 U.S.C. § 407(a). Although the Credit Union argued that § 407 applied only to "legal" (i.e., court-ordered) processes, the district court ruled that this anti-assignment

4

provision also applied to an equitable self-help remedy such as the setoff that the Credit Union employed. On appeal, the Credit Union once again contends that equitable self-help remedies are not "other legal process[es]" and are, thus, outside of the aegis of § 407.

When it passed § 407 of the Social Security Act, Congress "impose[d] a broad bar against the use of any legal process to reach all social security benefits." Philpott v. Essex County Welfare Bd., 409 U.S. 413, 417 (1973). The Supreme Court has affirmed that Social Security benefits, even when converted to "funds on deposit [that] [a]re readily withdrawable[,] retain[] the quality of 'moneys' within the purview of § 407." Id. at 416.

In Philpott, the State of New Jersey required all welfare recipients to sign agreements promising that if they ever became fiscally capable of doing so, they would reimburse the county welfare board for all welfare payments they had received. When one such welfare recipient received retroactive disability benefits under the Social Security Act, the State sued him in attempt to collect those funds. The Court, however, ruled that § 407 foreclosed New Jersey from reaching a debtor's Social Security payments. See id. at 417.

The Credit Union now asks us to distinguish Philpott because, unlike the agreement in that case, the Revolving Credit Plan Agreement permitted the Credit Union to collect its debts without resorting to the court system. However, while

<u>Philpott</u> involved an attempt by a creditor to use the court system rather than a self-help remedy to collect a debt, there is no principled difference between the agreement the State of New Jersey required welfare recipients to sign and the Revolving Credit Plan Agreement the Credit Union required Mrs. Tom to sign: Both were, in effect, contracts of adhesion that creditors attempted to use to get their hands on Social Security payments.

We can see no reason why Congress would, on the one hand, choose to protect Social Security beneficiaries from creditors who utilized the judicial system, a system that is built upon principles of fairness and protection of the rights of litigants, yet, on the other hand, leave such beneficiaries exposed to creditors who devised their own extra-judicial methods of collecting debts. <u>See</u> <u>Crawford v. Gould</u>, 56 F.3d 1162, 1166 (9th Cir. 1995) (rejecting a bank's argument that setoff is outside the purview of § 407 and stating that such a "cramped reading of § 407 . . . would enable [creditors] to obtain Social Security benefits through procedures that afford less protection than judicial process affords"); <u>but cf.</u> <u>Frazier v. Marine Midland Bank, N.A.</u>, 702 F. Supp. 1000, 1003 (holding that setoff is not within § 407's definition of "legal process"); <u>In re Gillespie</u>, 41 B.R. 810, 812 (Bankr. D. Colo. 1984) (same). Such a construction of § 407 would run contrary to both logic and the spirit underlying the Social Security Act. <u>See</u> <u>Helvering v. Davis</u>, 301 U.S. 619, 641 (1937) ("The hope

behind [the Social Security Act] is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when the journey's end is near."). Moreover, if the Supreme Court did not see fit to carve an exception to § 407 where an important public interest–a state's need to defray the costs of supporting indigent individuals–was at stake, we will not create an exception that would, for the most part, serve very private interests–banks' desires to cut their bad-debt losses. See also Bennett v. Arkansas, 485 U.S. 395, 397-98 (1988) (per curiam) (rejecting Arkansas's argument that § 407 contained an implied exception that would allow it to recover Social Security payments to prisoners in order to help offset the costs of imprisonment).

Although the Credit Union emphasizes that courts have previously acknowledged banks' common-law right to setoff, see, e.g., United States v. Butterworth-Judson Corp., 267 U.S. 387, 394-95 (1925), this fact is of no import here. As the California Supreme Court recognized, the "right to setoff is not absolute." Kruger v. Wells Fargo Bank, 521 P.2d 441, 450 (Cal. 1974). In Kruger, a bank attempted to exercise its common-law right to setoff against state disability and unemployment payments that a beneficiary had deposited in her account. Although a pair of California statutes exempted such funds from "attachment" and "execution," see Cal. Civ. Proc. Code § 690.175 (superseded 1987); Cal. Unemp. Ins. Code § 1342 (amended 1983), the bank contended that

7

setoff, as a common-law self-help remedy, was outside the purview of the statutes. The court, though, thought otherwise:

> Although the banker's setoff differs from attachment and execution in that it does not require the aid of a state official, there is no relevant difference between the two procedures as to the state objective of protection of unemployment compensation and disability benefits from claims of creditors. The assertion of a banker's setoff has exactly the same effect as a third party's levy of execution on the account–it deprives the depositor of the income which the state provided him to meet subsistence expenses, compelling the state either to give him additional money or leave him without means of physical survival.

521 P.2d at 452-53. We find this reasoning persuasive.

The Credit Union also stresses the fact that setoff is a remedy that originated in equity rather than in law. See Banco Central De Reserva v. Riggs Nat'l Bank, 919 F. Supp. 13, 17 (D.D.C. 1994). In light of Congress's clear and compelling desire to protect retirees' incomes, see Bennett, 485 U.S. at 398, we find it highly implausible that Congress intended for the availability of such protection to hinge on the subtle distinction between law and equity, a distinction that can elude even the most capable of attorneys. Furthermore, the Credit Union has failed to explain why this hoary distinction *should* govern the resolution of this question. Thus, we conclude that the equitable origins of setoff are of no consequence to our analysis under § 407.

Finally, the Credit Union argues that without the availability of setoff, it and other financial institutions will no longer be able to afford to make loans to

many Social Security recipients. However, Social Security funds were never intended to serve as collateral for cars or homes in the first place; they were intended to provide the elderly with a means of subsistence. See Act of Dec. 20, 1977, Pub. L. No. 95-216, 1977 U.S.C.C.A.N. (95 Stat.) 4160 ("It has long been recognized that the primary objective of the social security program [is] preventing dependency."). It is up to Congress, not us, to decide that such funds should be made available for things other than basic subsistence needs.

When Congress enacted § 407, it intended to exempt Social Security funds from all creditors, regardless of whether they attempted to reach those funds by way of the court system or by way of self-help remedies. We thus hold that setoff constitutes "other legal process" under § 407 and that the Credit Union violated this section when it seized Mrs. Tom's Social Security payments. Accordingly, we affirm the district court's grant of summary judgment to Mrs. Tom on her Social Security Act claim.

## Count II: Civil Service Retirement Act (5 U.S.C. § 8346          )

The district court also held that the Credit Union's seizure of Mrs. Tom's Civil Service pension payments violated § 8346 of the Civil Service Retirement Act. That section provides that "[t]he money mentioned by this subchapter is not

assignable, either in law or equity, . . . or subject to execution, levy, attachment, garnishment, or other legal process." 5 U.S.C. § 8346(a). Our analysis in the foregoing section largely forecloses the Credit Union's argument that it did not also violate the Civil Service Retirement Act when it seized the funds in Mrs. Tom's account. However, there is one distinction between the Social Security Act and the Civil Service Retirement Act that merits a brief discussion.

The Social Security Act's anti-assignment provision explicitly protects all "moneys paid or payable," 42 U.S.C. § 407(a), thus making clear that its aegis extends not only to the future right to receive payments but also to any payments that a beneficiary has already received. The Civil Service Retirement Act, though, exempts only "[t]he money mentioned by this subchapter." 5 U.S.C. § 8346(a). The Credit Union, seizing on the absence of the "paid or payable" language found in § 407, contends that the Civil Service Retirement Act, unlike the Social Security Act, does not protect funds that beneficiaries have already received. See In re Prestien , 427 F. Supp. 1003, 1008 (S.D. Fla. 1977) (holding that § 8346 "exempts only future pension amounts and not those already paid and accumulated"); In re Estate of McGreevy , 286 A.2d 355, 356-57 (Pa. 1971) (same).

The Supreme Court has held that Social Security benefits, even when converted to "funds on deposit [that] [a]re readily withdrawable[,] retain[] the quality of 'moneys' within the purview of § 407." Philpott , 409 U.S. at 416. Both

10

§ 407 and § 8346 are designed to guard the elderly from creditors who would separate them–through whatever means–from the money that they need to survive. Although not as precisely drafted as § 407, the broad language of § 8346 offers no hint that its protections are any narrower than those afforded to Social Security payments or that Congress intended to treat future payments any differently than payments already received. Moreover, the Credit Union fails to offer any rationale that would justify treating Civil Service pension payments any differently than Social Security payments. Accordingly, we conclude that § 8346, like § 407, protects both a beneficiary's right to receive future pension payments and any such payments that she has already received. See Waggoner v. Games Sales Co., 702 S.W.2d 808 (Ark. 1986) (reaching same conclusion); State of Missouri ex rel. Nixon v. McClure, 1998 WL 261107 (Mo. Ct. App. May 26, 1998) (same); Joseph v. Giacalone, 637 N.Y.S.2d 391 (N.Y. App. Div. 1996) (same); Sears, Roebuck and Co. v. Harris, 854 P.2d 921 (Okla. Ct. App. 1993) (same).

In sum, because the Civil Service pension benefits that Mrs. Tom deposited in her Credit Union account retained the quality of "money[s]" within the purview of § 8346 and because we have already held that setoff constitutes "other legal process," from which such funds are protected, we affirm the district court's grant of summary judgment to Mrs. Tom on her Civil Service Retirement Act claim.

## Count III: Breach of Contract

11

The district court also granted summary judgment to Mrs. Tom on her breach of contract claim. However, there is no evidence in the record that Mrs. Tom ever raised this claim in her motion for summary judgment. Although Mrs. Tom points to both her motion for summary judgment and her brief in support thereof in attempt to demonstrate that she did, in fact, raise this argument on summary judgment, neither of those documents mention her contract claim. In fact, in the section of her brief to which she directs our attention, Mrs. Tom even acknowledges that the Credit Union enjoyed a "legitimate contractual right to setoff." Aplt's App. at 33.

It is axiomatic that an appellate court generally "will not consider an issue raised for the first time on appeal." Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir. 1991). When Mrs. Tom failed to raise her contract claim in her summary judgment motion or brief, the Credit Union was entitled to presume that she had abandoned this claim. The fact that the district court may have sua sponte ruled on the contract claim is of no consequence; the Credit Union never had an opportunity to present any argument regarding this claim.

Furthermore, even had Mrs. Tom raised this issue on summary judgment, the record contains no evidence supporting the district court's judgment. In her brief, Mrs. Tom asserts that when she "requested that [the Credit Union] return her funds, [it] was contractually obligated to do so." Aple's Brief at 30. However,

12

neither Mrs. Tom nor the district court identifies any contract that might have given rise to such a duty. The Revolving Credit Plan Agreement is the only contract contained in the record before us, and Mrs. Tom has failed to identify any actions of the Credit Union that ran afoul of that Agreement. And while we agree with Mrs. Tom that our holding with respect to Counts I and II of her complaint voids the setoff provisions of the Agreement, see Capo v. Century Life Ins. Co., 610 P.2d 1202, 1207 (N.M. 1980), this conclusion in no way compels a holding that the Credit Union breached the remainder of the Agreement.

In order to prevail on her contract claim, Mrs. Tom needed to do two things: (1) come forward with a contract (such as a depository agreement) that required the Credit Union to return her funds to her upon request and (2) raise this argument in her summary judgment motion. However, because she did neither, we reverse the district court's grant of summary judgment to Mrs. Tom on her breach of contract claim.

## CONCLUSION

We hereby AFFIRM the district court's grant of summary judgment to Mrs. Tom on her claims that the Credit Union violated the Social Security and Civil Service Retirement Acts (Counts I and II), REVERSE the grant of summary judgment to Mrs. Tom on her breach of contract claim (Count III), and REMAND this case for further proceedings consistent with this opinion.