Tarza R. NELSON, Plaintiff–
Appellant–Cross–
Appellee,

v.

Barbara HEISS; K.W. Prunty, Warden;
James Gomez, Director of Correc-
tions; Does I through X, Inclusive;
Sylvia H. Garcia, Defendants–Appel-
lees–Cross–Appellants,

and

Does I Through X, Inclusive,
Defendant.

Nos. 00–55523, 00–55567

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 17, 2001 *

Filed Nov. 21, 2001

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Tarza R. Nelson, Coalinga, California, for the plaintiff/appellant/cross-appellee.

Diane de Kervor, Deputy Attorney General, San Diego, California, for the defendants/appellees/cross-appellants.

Before: BROWNING, FERNANDEZ, and FISHER, Circuit Judges.

FERNANDEZ, Circuit Judge:

Tarza Nelson brought this 42 U.S.C. § 1983 action against officials of the California Department of Corrections,[1] after holds were placed upon his inmate trust account. His principal contention was that 38 U.S.C. § 5301(a), which provides for the exempt status of veteran's benefits, was violated. The district court agreed, but determined that the Prison Officials were entitled to qualified immunity. It then granted their motion to dismiss. Fed. R.Civ.P. 12(b)(6). Both Nelson and the Prison Officials appeal. We affirm in part, reverse in part, and remand.

## BACKGROUND

Nelson had an inmate trust account at Calipatria State Prison which was funded with payments of Veteran's Disability Benefits administered by the United States Veterans Administration. He could use that account to purchase items at the prison canteen and to pay for special services that he desired. That was accomplished by the use of a "Trust Account Withdrawal Order," which provided "I hereby request that my Trust Account be charged $_____ for the purpose stated below and authorize the withdrawal of that sum from my account."

On September 25, 1996, Nelson signed a trust account withdrawal order for $11.70 in order to pay for copies of his medical records, and on October 31, 1996, he signed another one for $181.50 to pay for dental appliances, for a total of $193.20 which he requested be withdrawn from his account. At the time, he did not have funds in the account to cover those purchases, but the prison did not "bounce" his withdrawal orders. Rather, it granted what it saw as a kind of overdraft protection, provided the goods and services, and placed a hold on the account so that it could be repaid when funds did arrive.

Even though Nelson himself had asked for the goods and services and authorized the withdrawal, he complained that the prison could not legally accommodate him in that way because the funds in question came from veteran's benefits. The Prison Officials disagreed, and the hold remained. Nelson then brought this action on the basis that 38 U.S.C. § 5301(a)[2] had been violated. The district court agreed, but it granted the Prison Officials qualified immunity and dismissed. These appeals followed.

## STANDARDS OF REVIEW

■■■ We review a dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) de novo. *Bly–Magee v. California*, 236 F.3d 1014, 1017 (9th Cir.2001). We also review a district court's qualified immunity decision de novo. *Robinson v. Prunty*, 249 F.3d 862, 865–66 (9th Cir. 2001). Finally, issues of statutory construction are questions of law, which we review de novo. *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir.2001); *Tierney v. Kupers*, 128 F.3d 1310, 1311 (9th Cir.1997).

---

1. The officials are: Barbara Heiss, Senior Accounting Officer at Calipatria State Prison; K.W. Prunty, former Warden at that prison; Silvia H. Garcia, Chief Deputy Warden at that prison; and James Gomez, then Director of the California Department of Corrections.

Hereafter, unless otherwise stated, we will refer to them as the "Prison Officials."

2. Hereafter, our references to § 5301(a) are to this statutory provision.

## DISCUSSION

■ The merits of Nelson's § 5301(a) claim and the Prison Officials' motion for qualified immunity are bound up together. That is because, as the Supreme Court stated in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001):

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry....
>
> ... [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition....

*Id.* at ——, 121 S.Ct. at 2156.[3] In *Devereaux v. Abbey,* 263 F.3d 1070 (9th Cir. 2001) (en banc), we emphasized that:

> In essence, at the first step, the inquiry is whether the facts alleged constitute a violation of the plaintiff's rights. If they do, then, at the second step, the question is whether the defendant could nonetheless have reasonably but erroneously believed that his or her conduct did not violate the plaintiff's rights.

3. We recognize that Nelson's § 5301(a) claim directly relates to a statutory, rather than a constitutional, violation, but that makes no difference. *See Deorle v. Rutherford,* 263 F.3d 1106, 1118 (9th Cir.2001.)

4. We are cognizant of Nelson's claim that his rights were violated because he did not get predeprivation due process. *See Mathews v. Eldridge,* 424 U.S. 319 332–35, 96 S.Ct. 893, 901–03, 47 L.Ed.2d 18 (1976); *Brady v. Gebbie,* 859 F.2d 1543, 1554 (9th Cir.1988); *Quick v. Jones,* 754 F.2d 1521, 1523 (9th Cir.1985). We do not give it extensive consid-

*Id.* at 1074. Thus, we will first consider whether the prison officials violated § 5301(a), and then go on to the second step.[4]

### A. *Violation of § 5301(a)*

■ Section 5301(a) was designed to protect veteran's benefits against their creditors so that the veterans themselves could spend those funds as they saw fit when they actually got them, and not before. Thus, it reads, in pertinent part:

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

As far as we know, this provision has not been construed previously, but it is not overly murky. Had Congress said much more, it would probably have had to resort to pleonasm. Still, in practice it does seem rather technical to hold that a prisoner like Nelson cannot be given the benefit of an early draw on his funds, which suggests that we should say a bit more on this subject.

eration because it is plainly meritless. Nelson knew, or should have known, that his account was depleted, but he still asked that he be given the goods and services in question and personally consented to payment for them from his account. It will not do for him to now rather disingenuously complain that the Prison Officials essayed to do precisely what he asked them to do. Plainly, that was not the kind of action that would start judicial (or constitutional scholar) hands wringing; it was not a due process violation at all.

Perhaps the best thing to say is that this looks very much like the provision that protects Social Security benefits, and the courts have had much to say about that congressional declaration. Congress provided that:

The right of any person to any future payment under this subchapter shall not be transferrable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). While the language is somewhat different from § 5301(a), its reach is essentially the same.

The Supreme Court has had occasion to visit that Social Security provision. *See Bennett v. Arkansas,* 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988) (per curiam). When it did so, it dealt with an Arkansas statute that authorized the state to seize a prisoner's property "in order to help defray the cost of maintaining its prison system." *Id.* at 396, 108 S.Ct. at 1205. The Court was not impressed with the argument that the state was supplying all of the prisoner's needs. *Id.* at 398, 108 S.Ct. at 1205–06. Instead, it said, "Section 407(a) unambiguously rules out any attempt to attach Social Security benefits. The Arkansas statute just as unambiguously allows the State to attach those benefits. As we see it, this amounts to a 'conflict' under the Supremacy Clause—a conflict that the State cannot win." *Id.* at 397, 108 S.Ct. at 1205; *see also Philpott v. Essex County Welfare Board,* 409 U.S. 413, 415–17, 93 S.Ct. 590, 591–92, 34

L.Ed.2d 608 (1973). We have followed that lead and have declared that a state cannot pay for a prisoner's maintenance costs by attaching his Social Security benefits. *Brinkman v. Rahm,* 878 F.2d 263, 265–66 (9th Cir.1989). And we have gone on to declare that a district court properly ordered that Social Security benefits " 'are exempt from legal process and cannot be used to pay the plaintiff's cost of care without the patient's knowing, affirmative and unequivocal consent.' " *Crawford v. Gould,* 56 F.3d 1162, 1167 (9th Cir.1995).

We have not overlooked the "consent" language which we have just quoted, but that cannot be deemed to mean consent to withdrawal of funds that accrue in the future.[5] If it did, it would be directly contrary to the provision that a right to future payment "shall not be transferrable or assignable." 42 U.S.C. § 407(a). That spendthrift provision precludes consent to a taking of future benefits. Of course, § 5301(a) also declares that benefits "to become due ... shall not be assignable." Thus, to the extent that the Prison Officials consider Nelson's drawing on his account when it has insufficient funds to be consent to a hold on, and assignment of, future veteran's benefits, they cannot deflect his disavowal of that by chanting "overdraft protection."

But, the Prison Officials now argue, the amounts they put a hold upon and removed from the account are for maintenance and care[6] and in 1937 the Supreme Court said that veteran benefit payments are for that very purpose. *See Lawrence v. Shaw,* 300 U.S. 245, 249–50, 57 S.Ct. 443, 445, 81 L.Ed. 623 (1937). What they

---

**5.** We emphasize that we are dealing with the overdraft issue only. We are not concerned with, and do not opine upon, whether the trust account program as presently structured operates properly when there are funds in the account.

**6.** Whether such items as record copying expenses are for maintenance and care is problematic, but it makes no relevant difference anyway.

overlook is the fact that the Court was dealing with a situation where the state sought to tax bank accounts, including those which held veteran's benefits, and the Court said that could not be done. *Id.* Even after receipt and deposit, the funds remained subject to the call of the veteran, or his guardian, and could not be touched. *Id.; see also District of Columbia v. Reilly,* 249 F.2d 524, 525 (D.C.Cir.1957) (per curiam). That does not offer much solace to the Prison Officials.

Reasonably enough, the Prison Officials then argue that a number of state courts have allowed the taking of funds for maintenance and care purposes. *See Cruce v. Ark. State Hosp.,* 241 Ark. 680, 691–92, 409 S.W.2d 342, 349 (1966); *Gundry v. Wiarda (In re Lewis' Estate),* 287 Mich. 179, 186, 283 N.W. 21, 24 (1938); *Okla. ex rel. E. State Hosp. v. Beard,* 600 P.2d 324, 325–26 (Okla.1979) (per curiam); *State Dep't of Pub. Welfare v. DeBaker (In re Guardianship of Bemowski),* 3 Wis.2d 133, 142, 88 N.W.2d 22, 27 (1958). We cannot blame the Prison Officials for citing those state cases, but must point out that neither we nor the other federal courts have accepted that approach. In a chimerical search for some kind of purpose, those cases overlook the words of the statutory provision by claiming that Congress could not have meant what it said. But if Congress wanted to create exceptions to the language, it knew how to do so. In fact, it did provide for some in § 5301(a) itself, as well as in § 5301(c) & (d).

Therefore, we agree with the district court that § 5301(a) precludes the Prison Officials from placing holds on Nelson's account. Of course, notwithstanding the Prison Officials' jeremiad to the contrary, this does not preclude Nelson from directing that payments be deducted from funds which exist in his account at the time that he issues the direction. Nothing we say here precludes him from currently spending the benefits he has received.[7] In fine, Nelson's statutory rights under § 5301(a) were violated.

## B.  *Belief in Rectitude*

■ The next step in the qualified immunity analysis is to ask whether the Prison Officials could have "reasonably but erroneously" believed that they were not violating the statute. *Devereaux,* 263 F.3d at 1074. We agree with the district court that they could have.

Although we have shown that the Prison Officials were incorrect, they did have a number of state court cases that lent support to their position, and neither we nor the Supreme Court had ruled that § 5301(a) prohibited a veteran from doing what Nelson did here. In fact, it must have seemed (and even now seem) to them that this is another illustration of the aphorism that no good deed goes unpunished. Their approach did inject some flexibility into the trust account system, and, after all, Nelson did ask them to pay the money out of his account and on his behalf, and they could take comfort from *Crawford,* 56 F.3d at 1167, where we alluded to the efficacy of "consent." Moreover, the expenditures were of a discretionary nature, which differentiates them from the enforced cost of care mulcts imposed upon prisoners in past cases. The Prison Officials could see their program as a kind of benefit to Nelson that did not really amount to taking his property by some sort of legal process. All things considered, we cannot say that they behaved so

---

7. That said, we reject the Prison Officials' complaint that the district court improperly answered or anticipated parts of their monody. Perhaps some of what the district court said was dicta; it was not an advisory opinion. *Cf. Naylor v. Superior Court of Ariz.,* 558 F.2d 1363, 1366 (9th Cir.1977) (if a case is moot, the court's opinion is merely advisory.).

unreasonably that they fell into the category of those who are "plainly incompetent or ... who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *see also B.C. v. Plumas Unified School Dist.,* 192 F.3d 1260, 1268 (9th Cir.1999).

That, of course, demonstrates that the Prison Officials need not respond in damages. *See Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991). It does not mean that they cannot be enjoined from future violations of Nelson's rights. They admit as much. However, they contend that because Nelson has been removed from Calipatria State Prison to a different state prison facility, his action has become moot in that respect. We disagree in part.

It is true that when a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility. *See Dilley v. Gunn,* 64 F.3d 1365, 1368–69 (9th Cir.1995). We, therefore, agree that Nelson's action for injunctive relief against the Calipatria officials, Heiss, Prunty, and Garcia, has become moot. But he has also asserted a claim against Gomez, who was the Director of the Department of Corrections,[8] and, as the complaint alleges, set policy for the whole California prison system. *See* Cal.Penal Code §§ 5053–5054.

The trust account policy appears to be system wide. For example, the sample form of authorization to maintain a trust account, which we have been given, provides that the Director of the California Department of Corrections maintains the trust accounts.[9] Also at the director level, where the practice of the Calipatria State Prison was approved, it was determined that "[n]o changes or modifications are required by the institution," and Nelson's appeal was denied. That is sufficient to indicate that Nelson's request for injunctive relief against the Director of the Department of Corrections should not have been rejected out of hand on a Fed. R.Civ.P. 12(b)(6) motion. If some slight adjustment in the complaint was required to make it clear that he was challenging a system-wide problem, leave to amend should have been granted. *Lopez v. Smith,* 203 F.3d 1122, 1127–28 (9th Cir. 2000) (en banc); *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987).

## CONCLUSION

When the Prison Officials allowed Nelson to authorize a withdrawal from his empty prison trust account, advanced the goods and services requested, and then placed holds on the account until Nelson's incoming veteran's benefits paid back the advances, they, in effect, allowed him to assign his future benefits and then seized those to repay the prison system. That was in error because it violated § 5301(a). On the other hand, making that error was neither anserine nor intentionally wrong. Thus, they were entitled to qualified immunity from being subjected to damages. However, Nelson may still be able to obtain an injunction to preclude that practice in the future. As to that, the denouement awaits future action in the district court.

AFFIRMED in part, REVERSED in part, and REMANDED. The parties shall bear their own costs on appeal.

---

**8.** Gomez no longer holds that position. A new director, Edward S. Alameida, has been appointed and assumed office, but has not yet been confirmed. *See* Cal. Gov't Code § 1774. In due course, the district court can make the necessary official substitution. *See* Fed. R.Civ.P. 25(d).

**9.** *See also* Cal.Penal Code § 5057.