284 F.3d 990
 Luis LOPEZ, individually and on behalf of the General Public; Barbara Bowman; Gary D. Miller, Jr., individually and on behalf of all others similarly situated, Plaintiffs-Appellants,
v.
WASHINGTON MUTUAL BANK, FA, Defendant-Appellee.
 No. 01-15303.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 13, 2002.
 Filed March 14, 2002.
 Amended May 9, 2002.
 
 COPYRIGHT MATERIAL OMITTED Robert D. Newman (argued), Western Center on Law & Poverty, Los Angeles, CA. Appearances only by Helen H. Kang, Golden Gate University, San Francisco, CA; Kyra Kazantzis, Mental Health Advocacy Project, Law Foundation of Silicon Valley, San Jose, CA; Gerald A. McIntyre, National Senior Citizens Law Center, Los Angeles, CA; and Dean Paik, Cohen & Paik, San Francisco, CA, for the plaintiffs-appellants.
 Matthew L. Larrabee (argued), Heller Ehrman White & McAuliffe, San Francisco, CA. Appearance only by Scott E. Morgan, Heller Ehrman White & McAuliffe, San Francisco, CA, for the defendant-appellee.
 Appeal from the United States District Court for the Northern District of California; Ronald M. Whyte, District Judge, Presiding. D.C. No. CV-99-20890-RMW(PVT).
 Before: D.W. NELSON, NOONAN and HAWKINS, Circuit Judges.
 Opinion by Judge HAWKINS; Concurrence by Judge NOONAN.
 MICHAEL DALY HAWKINS, Circuit Judge.
 
 
 1
 We must decide whether the statutory protections afforded Social Security and Supplemental Security Income ("SSI") beneficiaries are offended by a bank's practice of using directly deposited Social Security and SSI benefits to cover overdrafts and overdraft fees. We must also decide whether plaintiffs' related state law claims are preempted by Office of Thrift Supervision ("OTS") regulations.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 The facts of this case are not extremely complex. Each of the named plaintiffs[1] receive Social Security and/or SSI benefits. Each had an account with Washington Mutual, and their benefits were directly deposited into these accounts. At the time the plaintiffs opened their accounts with Washington Mutual and/or its predecessors-in-interest, they executed account agreements which included provisions regarding overdrafts. Though differing in specific language, the agreements generally explained that if an account holder had insufficient account funds to pay a check, the bank had the option of rejecting the check or paying the check, creating an overdraft on the account accompanied by an overdraft fee. Each account agreement also contained a promise to immediately pay the overdraft amount to the bank. In addition, the bank would notify the account holder in writing in the event an overdraft occurred.
 
 
 3
 Each of the named plaintiffs then overdrew their accounts, creating overdrafts and incurring overdraft fees. In each case, the next deposit of Social Security and/or SSI benefits was used to satisfy the account deficiency.[2]
 
 
 4
 The plaintiffs filed their first amended complaint in December 1999, alleging that Washington Mutual's practice of using the directly deposited Social Security and SSI benefits to set off overdrafts and overdraft fees was prohibited by 42 U.S.C. §§ 407(a) and 1383(d)(1). The complaint also alleged several state law claims, including a violation of California Civil Procedure Code § 704.080, California Business and Professions Code § 17200, and the tort of conversion. The parties filed cross-motions for summary judgment. The district court granted Washington Mutual's motion, finding that the bank's practices did not violate federal law and that the state law claims were preempted. Plaintiffs appeal.
 
 STANDARD OF REVIEW
 
 5
 This court reviews a grant of summary judgment de novo. Robi v. Reed, 173 F.3d 736, 739 (9th Cir.1999). Questions of statutory interpretation are reviewed de novo, Alexander v. Glickman, 139 F.3d 733, 735 (9th Cir.1998), as are questions of preemption. Williamson v. General Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir.), cert. denied, 531 U.S. 929, 121 S.Ct. 309, 148 L.Ed.2d 247 (2000).
 
 DISCUSSION
 
 6
 I. Federal Exemption for Social Security and SSI Benefits
 
 
 7
 42 U.S.C. § 407(a), involving Social Security benefits, provides:
 
 
 8
 The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
 
 
 9
 42 U.S.C. § 1383(d)(1) extends these protections to SSI benefits as well.
 
 
 10
 These provisions offer Social Security and SSI recipients broad protection from creditors. The Supreme Court has recognized that the Social Security Act is "unusually protective" of claimants. Bowen v. City of New York, 476 U.S. 467, 480, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). The Court has also noted that there are no implied exceptions to the protections of Section 407(a), and that "Section 407(a) unambiguously rules out any attempt to attach Social Security benefits." Bennett v. Arkansas, 485 U.S. 395, 397, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988). When Congress has created exceptions, it has done so expressly, as with enforcement of child support orders. 42 U.S.C. § 659(a).
 
 
 11
 A. "Other Legal Process"
 
 
 12
 As a preliminary matter, we must consider whether Washington Mutual's offset practice constitutes a type of "other legal process" within the meaning of Section 407(a). In light of our current caselaw, which has broadly construed this phrase, we conclude it does.
 
 
 13
 In Crawford v. Gould, 56 F.3d 1162 (9th Cir.1995), we addressed California's practice of taking Social Security benefits from institutionalized patients' hospital accounts to pay for the cost of their care and treatment, whether or not the patients had signed a form authorizing such deductions. California argued that its actions were not prohibited by Section 407(a) because they had not resorted to any type of "other legal process" similar to those expressly listed in the statute. Id. at 1166. We rejected this argument, noting that Section 407(a) was designed "to protect social security beneficiaries and their dependents from the claims of creditors" (quoting Fetterusso v. New York, 898 F.2d 322, 327 (2d Cir.1990)), and that the "cramped reading of § 407 California urges would enable the state to obtain Social Security benefits through procedures that afford less protection than judicial process affords." Id. We therefore determined that reading "other legal process" to include the practice of withdrawing benefits from the accounts without consent was consistent with the purposes underlying Section 407. Id. at 1167-68.
 
 
 14
 More recently, we decided Nelson v. Heiss, 271 F.3d 891 (9th Cir.2001), holding that prison officials could not use veteran's benefits to satisfy overdrafts on an inmate's prison trust account. Although Nelson was actually construing 38 U.S.C. § 5301(a), which protects veteran's benefits from creditors, we expressly noted the similarity to Section 407(a) and relied upon Social Security cases to reach the result. Id. at 895.[3]
 
 
 15
 The only other circuit to address the issue has also construed "other legal process" quite broadly. The Tenth Circuit held that a credit union could not use the self-help remedy of setoff and apply Social Security benefits contained in a checking account to satisfy the depositor's loan obligation to the bank. Tom v. First American Credit Union, 151 F.3d 1289, 1293 (10th Cir.1998). Relying in part on our decision in Crawford, the court decided that the setoff constituted "other legal process" within the meaning of Section 407:
 
 
 16
 We can see no reason why Congress would, on the one hand, choose to protect Social Security beneficiaries from creditors who utilized the judicial system, a system that is built upon principles of fairness and protection of the rights of litigants, yet, on the other hand, leave such beneficiaries exposed to creditors who devised their own extra-judicial methods of collecting debts. Such a construction of § 407 would run contrary to both logic and the spirit underlying the Social Security Act. Moreover, if the Supreme Court did not see fit to carve an exception to § 407 where an important public interest — a state's need to defray the costs of supporting indigent individuals — was at stake, we will not create an exception that would, for the most part, serve very private interests — banks' desires to cut their bad debt losses.
 
 
 17
 Id. at 1292 (internal citations omitted). The Tenth Circuit also relied on a California state law case which discredited making a distinction between bank setoffs and legal actions such as attachment and execution:
 
 
 18
 Although the banker's setoff differs from attachment and execution in that it does not require the aid of a state official, there is no relevant difference between the two procedures as to the state objective of protection of unemployment compensation and disability benefits from claims of creditors. The assertion of a banker's setoff has exactly the same effect as a third party's levy of execution on the account — it deprives the depositor of income which the state provided him to meet subsistence expenses.
 
 
 19
 Id. (quoting Kruger v. Wells Fargo Bank, 11 Cal.3d 352, 113 Cal.Rptr. 449, 521 P.2d 441, 452-53 (1974)).
 
 
 20
 In sum, we agree that Washington Mutual's overdraft setoff constitutes a seizure of protected benefits by "other legal process." By paying the plaintiffs' checks when there were insufficient funds in the accounts, the bank essentially extended a loan to the plaintiffs and became a creditor. Washington Mutual then used the self-help remedy of setoff to recoup the plaintiffs' debt to the bank and enforce the contractual account holder agreement, in which the plaintiffs agreed to promptly repay any overdraft. Our decision in Crawford suggests that "other legal process" should be given an expansive reading in order to fulfill the purposes of Section 407, and not to permit a party "to obtain Social Security benefits through procedures that afford less protection than judicial process affords." 56 F.3d at 1166. Our recent decision in Nelson, along with the Tenth Circuit's reasoning in Tom, confirm that setoff procedures such as Washington Mutual's fall within the type of extra-judicial self-help remedies that are prohibited by Section 407(a).
 
 B. Consent
 
 21
 Because Washington Mutual's setoff actions would ordinarily be prohibited by Section 407(a), we must consider whether the plaintiffs consented to the use of their protected benefits to satisfy the bank's debt. We conclude that there was no "meaningful consent" to the use of their benefits, as required by this circuit's precedent. See Crawford, 56 F.3d at 1165.
 
 
 22
 Washington Mutual argues that the plaintiffs consented to the use of their benefits to repay the overdraft and overdraft fees by voluntarily opening the account and executing the account holder agreement (which outlined the terms and conditions of the bank's overdraft policies), establishing a direct deposit for their benefits (an agreement to which Washington Mutual was not a party), and leaving the account open and allowing the direct deposit to continue after incurring the overdrafts. Through such actions, Washington Mutual contends, each deposit to the account after an overdraft should be treated as a voluntary payment of a debt incurred.
 
 
 23
 Such an implicit "consent," however, falls far short of this circuit's requirements. In Crawford, we noted that California failed to obtain a "meaningful consent" from patients before deducting the cost of care from their Social Security benefits, pointing out that the state's authorization form "does not explain that patients can refuse to apply Social Security benefits to the cost of care." 56 F.3d at 1165-66. We went on to affirm the district court's order that required the state to notify patients that the benefits "are exempt from legal process and cannot be used to pay the plaintiff's cost of care without the patient's knowing, affirmative and unequivocal consent." Id. at 1167. Similarly, in Nelson, we rejected the prison's argument that Nelson had implicitly consented to using his veteran's benefits to pay for an overdraft by the act of drawing on his account when it had insufficient funds. 271 F.3d at 895.[4] It is undisputed that in this case, neither the initial account holder agreement nor any written overdraft notice notified the plaintiffs of their rights regarding their Social Security and SSI benefits, nor did the plaintiffs ever expressly agree to use such benefits to satisfy their obligations to the bank.
 
 
 24
 Washington Mutual argues that Crawford is distinguishable because the beneficiaries were involuntarily committed and not free to direct their funds to a different institution, thus presenting "unique concerns" not present in this case. Although the factual setting is different in this case, we do not find it a sufficient reason to disregard this precedent. Nothing in Crawford suggests its interpretation of Section 407(a) was limited to the precise factual scenario before it. Section 407(a) is designed to protect Social Security recipients from creditors of all kinds; it makes little sense that only states providing institutionalized care to a patient should be required to obtain a "knowing, affirmative and unequivocal" consent to the use of Social Security benefits to satisfy the beneficiary's debts. Cf. Tom, 151 F.3d at 1291-93 (credit union's setoff prohibited by Section 407(a), notwithstanding depositor's general agreement pledging other deposits as security for a loan and authorizing application of the deposits to the loan).
 
 
 25
 Washington Mutual points out that numerous creditors, such as landlords, grocers, etc., are paid with Social Security benefits daily without ever giving explicit notices that such benefits are exempt from legal process or without obtaining explicit consent from the beneficiary. In such instances, however, the Social Security beneficiary is clearly exercising control over the benefits and directing the payment to such creditors. In the banking situation, the direction to apply the deposit to the existing overdraft is only implied and the bank actually takes control of its debt directly, rather than making the full benefit available to the beneficiary to delve out as he sees fit. Indeed, in this respect the bank is very much like the state institution in Crawford or the prison in Nelson, because it gains access to the plaintiffs' funds before the plaintiffs do.
 
 
 26
 Once funds are in an account, as Nelson recognizes, a beneficiary can direct how those funds should be used. 271 F.3d at 896. But the alleged "direction" of funds here is simply too generic, vague and implicit, whereas Crawford teaches it must be "knowing, affirmative and unequivocal." 56 F.3d at 1167. We therefore reverse the district court because Washington Mutual's setoff practices violate 42 U.S.C. §§ 407(a) and 1383(d)(1), and there was no meaningful consent by the plaintiffs to such practice.
 
 II. Preemption
 
 27
 Plaintiffs also alleged three state law claims: (1) violation of California Civil Procedure Code § 704.080 (exempting Social Security and SSI benefits in a deposit account from any enforcement action), (2) violation of California Business and Professions Code § 17200 (prohibiting unfair or fraudulent business acts or practices) and (3) the tort of conversion. Washington Mutual contends that all of these causes of action are preempted by federal regulations promulgated by the OTS pursuant to the Home Owners' Loan Act ("HOLA").
 
 
 28
 Federal law preempts state law where Congress' intent to preempt is "explicitly stated in the statute's language...." Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). "Federal regulations have no less preemptive effect than federal statutes." Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).
 
 
 29
 In 1997, the OTS issued 12 C.F.R. § 557.11, which asserted its authority under HOLA to promulgate regulations that preempt state laws affecting federal savings associations. The regulation provides:
 
 
 30
 OTS hereby occupies the entire field of federal saving associations' deposit-related regulations. OTS intends to give federal saving associations maximum flexibility to exercise deposit-related powers according to a uniform federal scheme of regulation. Federal savings associations may exercise deposit-related powers as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise effect deposit activities, except to the extent provided in § 557.13.
 
 
 31
 The OTS then goes on to give some examples of state laws that are preempted by Section 557.11, including state laws purporting to impose requirements governing abandoned or dormant accounts, checking accounts, disclosure requirements, funds availability, savings account orders of withdrawal, and service charges and fees. 12 C.F.R. § 557.12. The OTS regulations also provide that certain types of state law are not preempted, if they only incidentally affect deposit-related activities or are otherwise consistent with the purposes of Section 557.11; these include state contract and commercial law, tort law and criminal law. 12 C.F.R. § 557.13.
 
 
 32
 We agree with Washington Mutual that plaintiffs' claim under California Civil Procedure Code § 704.080 is pre-empted by these regulations. This state law, which exempts Social Security and SSI benefits from any enforcement action, would impose requirements governing "checking accounts" because it would prohibit the use of certain deposits to the accounts to clear overdrafts and mandate the type of disclosures a bank must make regarding account and deposit transactions. It would also impose requirements regarding "funds availability" by prohibiting federal savings associations from treating certain benefits as available to clear overdrafts and pay fees. Finally, it would impose requirements governing "service charges and fees," because it would prohibit the bank from deducting overdraft fees from directly deposited benefits. By imposing requirements governing "checking accounts," "funds availability" and "service charges and fees," Section 704.080 falls within the specific categories of laws that are preempted under Section 557.12.
 
 
 33
 We believe, however, that the plaintiffs have the better argument with respect to their state law claims for conversion and unfair business practices. As the plaintiffs point out, these state laws do not purport to impose substantive "requirements" on checking accounts, funds availability or service charges, see § 557.12, but merely offer additional remedies for the violation of federal law. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 495, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (state's provision of traditional damages remedy for violation of federal regulations does not impose additional or different "requirements," but provides another reason to comply with federal law). Indeed, the OTS regulations specifically create an exception to preemption for state "contract and commercial law" and "tort law" that "only incidentally affects ... deposit related activities or is otherwise consistent with the purposes" of HOLA. 12 C.F.R. § 557.13. We agree that the unfair business practice and tort claim could only incidentally affect deposit-related activities. It is the federal law, Section 407(a), that has the primary effect on the bank's practices; these state claims merely piggyback on the federal violation and provide additional state remedies.
 
 CONCLUSION
 
 34
 Washington Mutual's practice of using directly deposited Social Security and SSI benefits to offset overdrafts and overdraft charges runs afoul of 42 U.S.C. § 407(a) & 1383(d)(a) because there was no "knowing, affirmative and unequivocal" consent by the plaintiffs to such practice. The district court correctly concluded that the plaintiffs' state law claim under California Civil Procedure Code § 704.080 is expressly pre-empted by OTS regulations because it would impose requirements on various deposit-related activities of a federal savings institution. Plaintiffs state law claims for violation of California Business and Professions Code § 17200 and conversion, however, do not impose any requirement on such activities and merely provide additional remedies for the federal law violation. These claims fall within the express exceptions of Section 557.13 and are not preempted.
 
 
 35
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Each party to bear its own costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 Plaintiffs seek relief on behalf of a class of similarly situated persons. However, the district court deferred ruling on class certification until after ruling on the cross motions for summary judgment
 
 
 [2]
 Although the reasons for the overdrafts are not material to the outcome in this case, some of the overdrafts at issue were apparently caused by third persons (one plaintiff's daughter used her ATM/debit card in unauthorized ways) or serious mental conditions such as bipolar affective disorder and paranoid schizophrenia
 
 
 [3]
 Similar to the language of Section 407(a), Section 5301(a) provides that veteran benefits "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."
 
 
 [4]
 Nelson also suggests that any such a consent to the taking of future benefits would run afoul of the spendthrift provision in Section 407(a), which precludes consent to a taking of future benefits. 271 F.3d at 895. The opinion suggests that the only way Nelson could properly consent would be to direct "that payments be deducted from funds which exist in his account at the time that he issues the direction." Id. at 896. Because in this case there was no express consent whatsoever, be it in advance or contemporaneous, we do not reach this question.
 
 
 
 36
 NOONAN, Circuit Judge, concurring.
 
 
 37
 The opinion of the court is faithful to the Social Security Act and the relevant precedents. Recipients of Social Security who depend on their checks for necessities are protected. Who could dissent? Nonetheless, this fidelity to the law produces a result that is not happy. As Judge Trott observed in an analogous case, Crawford v. Gould, 56 F.3d 1162, 1169 (9th Cir.1995), the answer to the problem created by the Social Security Act and precedent lies with Congress.
 
 
 38
 The policy embodied in § 407(a) of the Social Security statute conflicts with another policy encouraging direct deposit that has received energetic support from the federal government in recent years. Congress, indeed, has mandated direct deposit for all federal wage, salary, and retirement payments. 31 U.S.C. § 3332. Although the requirement in particular cases may be waived, the desire of Congress to make the practice general is unmistakable. Direct deposits are a convenience to the bank customers and mean an elimination of paperwork for the federal government and the bank, as well as the elimination of the problems created by lost or stolen checks or forged signatures. It is regrettable that the two policies cannot accommodate each other.
 
 
 39
 Holding that a bank cannot touch a directly deposited Social Security check, we make overdraft protection virtually impossible for Social Security recipients. The customer is held to be prevented by law from assigning his Social Security check to a creditor. Despite footnote 4 in the majority opinion, section 407(a), as construed here, as surely applies to prevent any consent to a future assignment. Whenever a Social Security beneficiary overdraws his account and the bank pays it, the bank runs the risk of running afoul of § 407(a) if the bank covers its loss when the customer's overdrawn account is replenished by a direct deposit. Faced with this risk, banks may not give overdraft protection to direct depositors of Social Security. These depositors, in turn, may abandon direct deposit.
 
 
 40
 This result is of dubious help to the great majority of Social Security recipients. Even this decision's value to the present plaintiffs is not clear. Their damages appear to consist in the return of the money taken. That leaves them owing an equal amount to the bank. They ask for punitive damages. But why should punitives be awarded for a practice that appeared perfectly legitimate? Although not at issue in this case, the Treasury sees nothing illegal in a bank deducting certain fees and charges from an account containing Social Security deposits. See 64 FR 38510, 38513 (July 16, 1999). The real winners here are the plaintiffs' attorneys, as plaintiffs asked for attorneys fees.