# IN THE COURT OF APPEALS OF IOWA

No. 20-0502
Filed March 17, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**YOOSUF MOMENT,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Robert J. Richter,

District Associate Judge.

Yoosuf Moment seeks discretionary after the district court denied his motion

to quash a general execution allowing the sheriff to collect jail fees. **REVERSED**

**AND REMANDED.**

Joey T. Hoover of Hoover Law Firm P.L.L.C., Epworth, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

We must decide whether funds levied to satisfy a sheriff's claim for jail fees were exempt from execution.

The issue arose following Yoosuf Moment's guilty plea to assault causing bodily injury and second-degree harassment. The district court adjudged Moment guilty and ordered him incarcerated in the Dubuque County Jail for 365 days, with all but ninety days suspended. Moment was credited with ninety days previously served.

In time, the sheriff filed a claim for reimbursement, asserting Moment "ha[d] a balance of $5505.90 for [r]oom and [b]oard fees relating to a court ordered sentence[] served in the Dubuque County Jail." The sheriff sought "an [o]rder directing the [e]xecution to issue in accordance with . . . Iowa Code [section] 356.7(3) [(2019)] for the total amount of this claim." The district court granted the request and ordered execution to issue in the amount of the claim. The sheriff obtained a writ of execution for $5530.90.[1] The same day, the sheriff "levied on funds belonging to [Moment] that were in the possession of the Dubuque County Jail," collecting a total of $4200.

Moment moved to quash the levy. He asserted the seized money was "placed [i]n the account after [he] was acquitted in" another case, notwithstanding his request to have the money "released to his sister." He claimed the money came "from [d]isability payments he receives and [d]isability payments are exempt from collection." Moment simultaneously filed a motion for a restitution hearing,

---

[1] The sum included $25 in court costs.

contesting "any amount [of jail fees] where [he] has not been convicted or where [he] has not been sentenced to contempt." The district court scheduled a hearing, "not[ing] this [was] not a criminal restitution hearing but rather a civil proceeding and hearing governed by [c]hapter 626," and the hearing would encompass Moment's motion to quash the levy.

The hearing began with a professional statement from the assistant county attorney. He informed the court that the total amount claimed by the sheriff represented "Mr. Moment's numerous jail stays over the last 20 years." Seeking clarification, the district court asked, "So, the money is not from this case, it's fees that he owed from other cases[?]" The assistant county attorney responded, "Yes, dating back as far as 1999."

A clerk employed by the sheriff's office confirmed the prosecutor's representation that the execution encompassed jail fees accrued in a number of criminal cases spanning two decades. She offered a list of the cases downloaded from the sheriff's database. The list was admitted.

In response, Moment's attorney advised the court that the money placed in Moment's jail account was seized in a drug case that resulted in Moment's acquittal. He called Moment to establish the source of the funds.

Moment testified the money "on [his] books" was "a disability check that [he] had set up to go buy a trailer." He said, "We were on our way to go buy [the] trailer with the disability money" when it was seized. His attorney then asked, "[W]as any of that money from anything other than [s]ocial [s]ecurity [d]isability?" Moment responded, "It was not; all disability money." Counsel continued, "Did you request that money that was seized be placed on your books?" Moment responded, "I did

not." To support his assertion that he received disability benefits, Moment pointed to a recent statement from the Social Security Administration detailing an overpayment of supplemental security income benefits. He stated he could not get receipts for amounts he received before the date of the statement because he was in jail. The overpayment statement was admitted.

Following the hearing, the district court ruled Moment's "objections are without merit and the judgment and execution were properly issued." The court acknowledged Moment's testimony that "the cash seized by the Dubuque Police Department was going to be used to buy a trailer and the money was saved from his social security benefits." The court also acknowledged that "social security benefits are exempt under [Iowa Code] section 627.6(8)(a)." But the court found Moment could not avail himself of that exemption because he converted the benefits to cash and although cash fell within another exemption, Iowa Code section 627.6(14),[2] "Mr. Moment failed to present any evidence that the cash seized was the extent of his cash, bank accounts or personal property."

Moment filed a motion to reconsider, which was denied. The supreme court granted Moment's request for discretionary review and transferred the case to this court for disposition.[3]

---

[2] That provision exempts "[t]he debtor's interest, not to exceed one thousand dollars in the aggregate, in any cash on hand, bank deposits, credit union share drafts, or other deposits, wherever situated, or in any other personal property whether otherwise exempt or not under this chapter." *See State v. Stanton*, No. 16-1193, 2018 WL 1182617, at *2 (Iowa Ct. App. Mar. 7, 2018) ("It was [the defendant's] burden of proof to show the exemption applied to the cash that was seized from him at the time of this arrest.").

[3] In its resistance to Moment's application for discretionary review, the State asserted the application was untimely. We read the supreme court's order granting the application as an implicit rejection of that argument.

Moment contends the district court erred "when it failed to quash the levy based on [an] exemption under Iowa Code [section] 627.6." In his view, "[t]he plain language of Iowa Code § 627.7(8)(a) does not lead to the conclusion that the Social Security funds would lose their exemption simply because it is converted into cash." Alternatively, he asserts, "[i]n the event that [we] find[] that the money collected was not exempt funds," we should reject all but "the $2000 clamed in" the case resulting in his guilty plea.[4] The exemption issue is dispositive. Our review of the issue is for errors of law.

---

[4] Moment reiterates that the money in the jail account "was seized" in a case that went to trial and resulted in his acquittal and "was then placed [i]n [his] [j]ail [a]ccount, without his permission." At the restitution hearing, he argued "that [he] was acquitted in the drug case on 9-26, 2018, and then on 10-8, 2019 is when the motion for an order approving room and board were filed." On appeal, he does not specifically challenge the transfer of the funds to his jail account on the ground that the State is required to return seized funds following an acquittal. *See* Iowa Code § 809.5 ("Seized property shall be returned to the owner if the property is no longer required as evidence or . . . if the property is no longer required for use in an investigation, if the owner's possession is not prohibited by law, and if a forfeiture claim has not been filed on behalf of the state"); *cf. State v. Stanton*, No. 16-1671, 2017 WL 4570436, at *3 (Iowa Ct. App. Oct. 11, 2017) ("We find the district court did not err in concluding the State could proceed with garnishment proceedings, although the funds were held by the State as seized property at the time the garnishment proceedings were initiated."). The supreme court recently addressed an analogous issue—the question "whether the district court erred when it didn't apportion the fees imposed under [Iowa Code] section 356.7 between" a "count of conviction" and a "count of acquittal." *State v. Shackford*, 952 N.W.2d 141, 146 (Iowa 2020). The court held "courts must apportion fee and cost reimbursement claims under Iowa Code section 356.7 between those clearly attributed to the counts of conviction and those clearly attributed to the dismissed counts." *Id.* at 147; *see also State v. Dudley*, 766 N.W.2d 606, 616–17 (Iowa 2009) (addressing an order requiring a defendant to pay $200 per month on a judgment and, after citing the defendant's testimony that "his sole source of income was a social security benefit," concluding "the different treatment of acquitted defendants . . . as compared to ordinary civil judgment debtors violates the Equal Protection Clause" and a payment plan could not deprive the defendant of "the protections to which other civil judgment debtors would be entitled").

Iowa Code section 627.6(8)(a) states that certain property or property interests of a debtor who is a resident of Iowa may be exempt from execution, including "[t]he debtor's rights in . . . a social security benefit." "The statutory exemption provisions are binding upon the state" and, presumably, county officials. *In re Estate of Deblois*, 531 N.W.2d 128, 130 (Iowa 1995).

Moment's undisputed testimony, with or without corroborating documentary evidence, established that the source of the money in the jail account was "a disability check." The overpayment exhibit together with his testimony indicated the payments he received were federal benefits. The State[5] concedes that "[u]nder federal law, arguably a social security benefit converted to cash is exempt from execution."[6] *See* 42 U.S.C. 407(a) ("The right of any person to any future payment

---

[5] In its resistance to Moment's application for discretionary review, the State asserted that, "[a]s a civil matter in which a county agency sought to enforce its right to a money judgment, the office of the Attorney General arguably has no standing to appear in this matter." But the State continued,

In any event, because these claims are typically filed in the criminal case and ordinarily the party who represents the state in a criminal case is the attorney general, appeals involving sheriff's room and board fees are routinely and ordinarily served on the attorney general. Further, because these claims are also frequently filed as claims for restitution, a component of criminal sentencing, the state will sometimes be a party to the action. Because Iowa Code section 13.2(1) permits the attorney general to appear in a case in which the State has an interest, the State through the attorney general elects to file a resistance in this case.After the supreme court granted discretionary review, the office of the attorney general filed a brief on behalf of the State without re-asserting the standing question. Moment does not challenge the State's participation.

[6] But the State asserts that particular "argument was not made" by Moment. True, Moment did not cite the federal exemption statute in the district court, but he did argue that "the funds came from [s]ocial [s]ecurity [d]isability which would be exempt under Iowa Code [section] 627.6." Additionally, the question whether benefits converted to cash retained their exempt status was squarely before the court and the issue was decided. The State does not assert Moment's failure to cite federal law on an issue raised and decided by the district court implicates an error-preservation concern and we discern no error-preservation concern.

under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."); *Philpott v. Essex Cty. Welfare Bd.*, 409 U.S. 413, 415–16 (1973) (concluding section 407 "[o]n its face," barred a State "from reaching" federal disability payments made to a recipient, and stating "the funds on deposit were readily withdrawable and retained the quality of 'moneys' within the purview of [section] 407").[7]

The State's concession is well-taken. "Section 407(a) unambiguously rules out any attempt to attach Social Security benefits." *Bennett v. Arkansas*, 485 U.S. 395, 397 (1988). In *Bennett*, the Court concluded the State of Arkansas could not levy on social security benefits paid to prisoners in order to help defray the cost of maintaining the prison. *Id.* at 398. As discussed in *Philpott*, the proscription extends to money in a bank account that is derived from social security benefits. *See* 409 U.S. at 416. Other courts have held the same thing. *See Jones v. Goodson*, 772 S.W.2d 609, 611 (Ark. 1989) ("In this case, it is undisputed that Jones's social security benefits were on deposit in his checking account, were

---

[7] The overpayment notice together with Moment's testimony suggest Moment's benefits were supplemental security income disability benefits. Although section 407(a) falls under the subchapter dealing with old age, survivors, and disability benefits, the provision was incorporated into the chapter governing "supplemental security income for the aged, blind, and disabled." *See* 42 U.S.C. § 1383(d)(1) ("The provisions of section 407 of this title . . . shall apply with respect to this part to the same extent as they apply in the case of subchapter II."); *In re Burnett*, No. 10-31788, 2011 WL 204907, at *2 (Bankr. N.D.N.Y. Jan. 21, 2011) ("This anti-assignment provision was again incorporated by Congress when the program was expanded in 1972 as a form of public assistance extending supplemental security income benefits to those 65 years of age and older, to the blind and disabled").

readily withdrawable, and had not been invested in any manner. Accordingly, the trial court did not err in holding that the social security benefits were exempt from execution."); *In re Estate of Merritt*, 651 N.E.2d 680, 682 (Ill. App. Ct. 1995) (holding "social security benefits that are reasonably traceable retain their exemption even if they are commingled with other nonexempt funds in the same bank account"); *E.W. v. Hall*, 917 P.2d 854, 858–59 (Kan. 1996) (rejecting assertion that once a defendant placed social security money in a certificate of deposit, the funds were no longer exempt); *Ultra Thin, Inc. v. Lane*, 210 P.3d 872, 876 (Okla. Civ. App. 2009) (stating "[s]ection 407 'imposes a broad bar against the use[s] of any legal process to reach all social security benefits'" and accepting debtor's "consistent[] deni[al] that he possessed any interest in the funds of the joint account other than as his grandson's representative to receive the payments of his grandson's social security benefits" (citation omitted)).

Our supreme court has also addressed the exemption, albeit not in this precise context. In *Smith-Porter v. Iowa Department of Human Services*, 590 N.W.2d 541, 545 (Iowa 1999), the court hold a state agency's summary offset procedures did not "override the exemption available under section 627.6(8) when the funds sought to be intercepted are disability payments." In response to the State's argument that the money against which it was attempting to offset the overpayment was a "welfare grant" rather than a disability payment, the court stated, the "true purpose" of a payment was "to benefit a disabled person." *Smith-Porter*, 590 N.W.2d at 544.

We recognize the supreme court has declined to apply the exemption in some instances. But these exceptions from the section 627.6 exemptions are

dictated by other statutes. *See Deblois*, 531 N.W.2d at 131 (concluding Iowa Code section 422.26, which expressly disallowed exemptions from the payment of taxes, was "intended to deny an exemption when executing on a taxpayer's property to collect state income taxes"); *In re Marriage of Rife*, 529 N.W.2d 280, 282 (Iowa 1995) (noting a statutory spousal support exception to the exemption statute); *Shepherd v. Shepherd*, 467 N.W.2d 237, 240 (Iowa 1991) (analyzing 42 U.S.C. sections 407 and 659 and Iowa Code section 627.8 and concluding a father's social security benefits "were not exempt from mandatory withholding" in order to fulfill his child support obligation); *In re Estate of Nielsen*, 445 N.W.2d 780, 782 (Iowa 1989) ("[A] debtor cannot claim the protection of the exemption statute to avoid a claim for unpaid alimony or child support."); *see also* Iowa Code § 627.6A(1), (2) ("Notwithstanding the provisions of section 627.6, a debtor shall not be permitted to claim exemptions with regard to payment or a portion of payment under a pension, annuity, individual retirement account, profit-sharing plan, universal life insurance policy, or similar plan or contract due to illness, disability, death, age, or length of service for child, spousal, or medical support" and, "[i]n addition to subsection 1, if another provision of law otherwise provides that payments, income, or property are subject to attachment for child, spousal, or medical support, those provisions shall supersede section 627.6."). The State cites no statutory exceptions to application of the social-security-benefit exemption and, as discussed, acknowledges that a federal statute requires application of the exemption.

Given Moment's undisputed testimony that the seized money came from his disability check alone as well as federal and state authority establishing the

funds represented in that check are exempt from execution, we conclude Moment was entitled to have the levy quashed. We reverse the order denying the motion to quash and remand for entry of an order returning the levied funds to Moment.

**REVERSED AND REMANDED.**